## McDONALD et al. v. MAXWELL et al., EXECUTORS.

### CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 147. Argued January 20, 1927.—Decided April 11, 1927.

1. A decision of the Supreme Court of the District of Columbia, in Probate, allowing a commission to executors in the approval of their yearly account, is reviewable by appeal without bill of exceptions, where an issue of law only was involved, raised by exceptions of the beneficiaries to the account. P. 95.

---

2. Stock dividends on corporate shares in a decedent's estate in process of administration, do not in themselves represent an increase of value upon which the executor is entitled to have a commission. *Gibbons* v. *Mahon*, 136 U. S. 549.  P. 96.

3. Judgment entered *nunc pro tunc,* as of the day on which the cause was argued and submitted, in view of the death of one of the respondents since occurring.  P. 99.

6 F. (2d) 678, reversed.

CERTIORARI (269 U. S. 542) to a judgment of the Court of Appeals of the District of Columbia which affirmed a judgment allowing commissions to the respondent executors, over exceptions exhibited on behalf of the beneficiaries.

*Mr. Charles V. Imlay,* with whom *Mr. Charles E. Wainwright* was on the brief, for petitioners.

*Mr. Frederic D. McKenney,* with whom *Messrs. John S. Flannery, G. Bowdoin Craighill, Joseph S. Graydon,* and *Edward DeWitt* were on the brief, for respondents.

MR. JUSTICE SANFORD delivered the opinion of the Court.

In the course of a proceeding that had been pending for many years in the Supreme Court of the District of Columbia, sitting as a Probate Court, for the administration of the estate of James McDonald, deceased, under his last will and testament, the executors were allowed certain commissions for the one year period covered by their ninth account.  On an appeal by the beneficiaries under the will, two of whom are minors represented by a guardian *ad litem,* the District Court of Appeals, being of opinion that there was "nothing on the face of the record to indicate error," affirmed the judgment allowing

*tral R. R. Co.* v. *Mulberry Coal Co.,* 238 U. S 275, 281; *Bullen* v. *Wisconsin,* 240 U. S. 625, 632; *Hiawassee River P. Co.* v. *Power Co.,* 252 U. S. 341.  Compare *Virginian Ry. Co.* v. *Mullens,* 271 U. S. 220.

these commissions. 6 F. (2d) 678. And this writ of certiorari was thereupon granted. 269 U. S. 542.

A motion by the executors to dismiss the writ and affirm the judgment, on the ground, in effect, that the record presents no substanial question for review, was postponed to the hearing; and the case has been heard on this motion and on the merits.

The record—aside from formal and undisputed matters—consists of the account filed by the executors, a report and exception by the guardian *ad litem,* an exception by the adult beneficiary, and the order of the court allowing the commissions. From these it appears that the executors, in August, 1923, filed their ninth account, covering the period from July 11, 1922 to July 12, 1923— hereinafter referred to as the accounting period. In this account they stated, under the heading of "Receipts Principal Account," that, in addition to the balance of principal in their hands on July 11, 1922, shown by their eighth account, they had charged themselves with the profits received during the accounting period from the sales of certain inventoried items, aggregating $1,604.32, and with certain shares of stock which they had received during the accounting period as stock dividends, "at the face or par value thereof," aggregating $1,570,325, making a total of $1,571,929.32; and that they "claim and hereby retain for their services a commission of five per cent. upon profits realized on proceeds of inventoried items, and the par or face value of stocks received as dividend, viz, $1,571,929.32 . . . . . 78,596.47."

They further stated, under the heading "Income Account," that, in addition to the balance of income shown by their eighth account, they had charged themselves with income received during the accounting period on the property owned by the estate, aggregating $247,814.39; and that they "also claim and hereby retain for their services a commission of five (5) per cent. upon the

annual income and profits on income investments re-
ceived   .   .   .   .   12,390.72."

The guardian *ad litem*, pursuant to a former order of
the court, filed a report concerning the matters involved
in this account, in which—after pointing out that the
executors on their previous accounts had been allowed
commissions of more than $200,000 upon the principal of
the estate and $50,000 upon the income—he insisted that
the sum of $12,390.72, claimed as commission on the in-
come received, was a sufficient compensation for their
services during the accounting period; and that as to the
additional commission of $78,596.47 claimed on an " in-
crease in principal " of $1,571,929.32, the stock dividends
of $1,570,325, of which this mainly consisted, were " not
a proper basis upon which to charge a commission." And
he specifically " except(ed) to the requested allowance
of $78,596.47 for commission on principal."

The adult beneficiary also filed an exception to the
account upon the ground that " the commissions claimed,
in large part, are based upon an alleged increase in the
capital assets of said estate  .   .   .   consisting in the
issuance to said estate, as the holder of stock in a large
number of corporations, of stock dividends, when as a
matter of law and of fact, the issuance of said stock divi-
dends added nothing to the interest of said estate as a
share holder in said corporations, but merely changed the
evidence of said interest, in the shape of stock certificates,"
and " the issuance of stock dividends to said estate can-
not be considered as an increase of either capital or
income."

Thereafter, the court, without handing down an opin-
ion, entered an order reciting that the ninth account of
the executors " being now presented for approval, the
same is, after examination by the Court, approved and
passed, the executors being allowed $12,390.72 commis-
sion on income, as claimed, but being hereby allowed

$50,000.00 commission on increase in principal instead of $78,596.47 claimed."

It thus is apparent that the court allowed the commission of $50,000 " upon profits realized on proceeds of inventoried items, and the par or face value of stocks received as dividend, viz, $1,571,929.32," for which the executors had claimed a commission of $78,596.47, on the ground that these profits and the par or face value of the stock dividends constituted an " increase in principal " upon which a commission could be allowed.

The beneficiaries do not challenge here so much of this allowance as was based on the $1,604.32 of profits realized from inventoried items, on which the executors claimed a commission of 5 per cent., or $80.22. And the sole question presented is whether the remainder of the $50,000 allowed as a " commission on increase in principal," that is, at least $49,019.78, which was based solely on the $1,570,325 of stock dividends, was properly allowed.

The Court of Appeals—after stating that the orders in a proceeding in the District Probate Court are reviewable only in accordance with the practice at common law by which the evidence must be brought up in a bill of exceptions, and that the record did not contain any bill of exceptions or purport to show the substance of the testimony—said: " The court below, evidently after a hearing in which all pertinent facts and circumstances were considered, reached the conclusion that the executors were entitled to $50,000 commission on increase in principal, and made that allowance. The facts and circumstances upon which this allowance was based are not before us, and, there being nothing on the face of the record to indicate error, it is apparent that the judgment must be affirmed. . . ." We think this was error.

This proceeding is not like one for the probate of a will involving an issue as to the competency of the testator, in

which the parties have a right to a trial by jury and to bills of exception covering the rulings of the court during the progress of the trial, and a review may be had upon writ of error, *Ormsby* v. *Webb,* 134 U. S. 47, 64, but one in which the District Supreme Court, sitting in probate, is clothed, as an orphans' court, with power to proceed with the settlement and distribution of the estate in accordance with equitable principles and procedure, and a controversy in matter of law raised by the exceptions of the beneficiaries to the executors' account, and apparent on the record, is reviewable on appeal. *Kenaday* v. *Sinnott,* 179 U. S. 606, 614.

Here the exceptions raised no issue as to the matters of fact stated in the executors' account, but a question of law merely. There is no recital in the record that the order was based upon any evidence submitted; no reference to the hearing of any evidence; and nothing, we think, from which any inference can be rightly drawn that the court made an investigation of any matters not shown by the executors' account, or allowed the commission on the stock dividends on any ground other than that as matter of law the receipt of the stock dividends constituted an " increase in principal " of the estate.

And as to this we think the ruling was erroneous. There was, it is to be noted, no statement in the executors' account that the aggregate value of the dividend shares received and the original shares on hand at the commencement of the accounting period, was any greater than the value of the original shares alone before the dividend shares were issued, or that the value of the principal of the estate had increased in any manner during the accounting period. They made no claim for the allowance of an additional commission on the ground that there had been such an increase; their sole claim being, as shown by their account, that they were entitled

to the additional commission by reason of the fact that they had received stock dividends of the par value stated. And, for aught that appeared from their account, the combined value of the original shares and the dividend shares was precisely the same at the end of the accounting period as the value of the original shares alone at its commencement.

Assuming, but not deciding, that if the executors' account had shown an increase in the value of the principal of the estate during the accounting period, this, if claimed, would have been a proper basis for the allowance of an additional commission, it is clear that the mere fact that the executors had received the stock dividends during the accounting period did not show any increase in the principal of the estate.

In *Gibbons* v. *Mahon*, 136 U. S. 549, 559, 565, in determining whether a stock dividend accrued to the tenant for life under a trust estate, this Court said: "A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones." And the Court quoted with approval the statement in *Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162, 189, that: "After such a dividend the aggregate of the stockholders own no more interest in the corporation than before. The whole number of shares

55514°—28——7

before the stock dividend represented the whole property of the corporation, and after the dividend they represent that and no more. A stock dividend does not distribute property, but simply dilutes the shares as they existed before." So in *Eisner* v. *Macomber,* 252 U. S. 189, 211, in which it was held that stock dividends were not taxable as income, the Court said: "The essential and controlling fact is that the stockholder has received nothing out of the company's assets for his separate use and benefit; on the contrary, every dollar of his original investment, together with whatever accretions and accumulations have resulted from employment of his money and that of the other stockholders in the business of the company, still remains the property of the company, and subject to business risks which may result in wiping out the entire investment. Having regard to the very truth of the matter, to substance and not to form, he has received nothing that answers the definition of income within the meaning of the Sixteenth Amendment."

It is apparent, in the light of these decisions, that the stock dividends received by the executors represented no real increase in the principal of the estate during the accounting period. They merely changed the form of the estate's investment in the corporate stocks by increasing the number of its shares, but left the aggregate value of all its shares the same as that before the dividend shares were issued. After their issuance, which necessarily "diluted" the value of the original shares, the dividend shares and the original shares together represented the same proportional interest in the corporate properties that had previously been represented by the original shares alone; no more, and no less. Clearly, therefore, the dividend shares themselves represented no increase in the value of the estate; and they could not properly be taken as the basis for the allowance of a commission to the

executors on the theory that their receipt, in and of itself, constituted an increase in its capital.

The executors' motion to dismiss and affirm must accordingly be denied; and the judgment reversed. But, the Court being advised that the respondent Maxwell, one of the executors, has died since January 20, 1927, the day on which this case was argued and submitted, the judgment here will be entered *nunc pro tunc* as of that day. *Quon Quon Poy* v. *Johnson,* 273 U. S. 352, and cases cited.

*Judgment reversed, nunc pro tunc.*