Mary Tower ENGLISH, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 12684.

United States Court of Appeals Seventh Circuit.

Oct. 16, 1959.

Clyde J. Cover, Fort Wayne, Ind., for appellant.

Charles K. Rice, Asst. Atty. Gen., Loring W. Post, Attorney, Tax Division, U. S. Dept. of Justice, Washington, D. C., Kenneth C. Raub, U. S. Atty., Fort Wayne, Ind., Lee A. Jackson, Louise Foster, Attorneys, Department of Justice, Washington, D. C., Charles R. LeMaster, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Mary Tower English, plaintiff-appellant,[1] the widow-beneficiary of Dr. Calvin H. English, brought suit in the District Court against the United States of America, defendant-appellee, for recovery of $90,331.04 she paid as a deficiency estate tax assessment and interest in the estate of the decedent. Plaintiff's claim for refund had been disallowed. The District Court denied recovery and plaintiff appealed.

The contested issues are (1) whether the property held jointly by decedent and plaintiff at the former's death is includable in his gross estate under Section 811(e) of the Internal Revenue Code of 1939 (26 U.S.C. 1952 ed., § 811) and (2) whether gifts of stock and an automobile made to decedent's daughter and son-in-law were as to decedent's interest made in contemplation of death and includable in his gross estate under Section 811(c) of the Internal Revenue Code of 1939 (26 U.S.C. 1952 ed., § 811).

The decedent died in 1948 at the age of ninety-one. All of his property was held jointly with right of survivorship with plaintiff. On April 8, 1944 a property settlement was entered into by decedent and plaintiff under which all of their property not already so held was placed in joint tenancy. The decedent and plaintiff had maintained a joint bank account. Items held jointly at decedent's death included stock of the Lincoln National Life Insurance Company,[2] stock of a manufacturing company, U. S. Government bonds, bank stock and the bank account.

In 1929 decedent made a gift of 3000 shares of Lincoln stock to plaintiff, an additional 565 shares were acquired in plaintiff's sole name, purchased by decedent from the joint bank account, during the period ending April 5, 1938, and between September 30, 1938 and October 17, 1941, 513 shares of Lincoln were acquired in the names of decedent and plaintiff as joint tenants. Lincoln declared stock dividends in 1943 and 1946, the dividend shares being issued in the names of the persons holding the original shares. The manufacturing company stock, the government bonds and bank stock were all originally acquired by decedent and plaintiff in their joint names as joint tenants and were purchased from the joint bank account and from proceeds of the sale of jointly held Lincoln stock.

At the time of the 1944 property settlement agreement the Lincoln stock owned and held by the plaintiff individually consisted of the 3000 shares given her by decedent in 1929, the 565 additional shares he purchased in her name up to and including April 5, 1938, together with the shares issued to plaintiff individually as a result of the 1943 stock dividend. These shares, a total of 4,991 belonging to the plaintiff and 5,467 shares of Lincoln stock belonging to the decedent individually were placed in the name of decedent and plaintiff as joint tenants pursuant to the 1944 agreement.

The decedent and the plaintiff gave one hundred shares of the Lincoln stock which they held jointly to their daughter and son-in-law on December 21, 1946 and another one hundred shares of the same stock was also given to them on February 6, 1947. In the fall of 1947 a gift of an automobile was made to the daughter and son-in-law. These gifts were made within two years of decedent's death and while he was confined to bed during his last illness.

The plaintiff had no income other than the cash dividends she received on stock. These dividends were deposited in the joint bank account. The plaintiff testified that the disbursements she made from the joint bank account were for "personal use and the home"; that the decedent made all disbursements for the purchase of stock. The plaintiff testified that she did not know how much she had deposited or had withdrawn from the joint bank account and had no record thereof.

1. Referred to as plaintiff

2. Referred to as Lincoln.

The District Court found that the plaintiff failed to prove that she contributed anything in money or money's worth toward the purchase price of the Lincoln stock or other items which were held in joint tenancy at the time of decedent's death. The court further found that the gifts of the two blocks of Lincoln stock and the automobile were made in contemplation of death and that all the items involved were properly includable in the gross estate of decedent.

Section 811 of the Internal Revenue Code of 1939 provides as follows with respect to property held in joint tenancy:

> "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
>
> \*     \*     \*     \*     \*     \*
>
> "(c) Joint Interests.
>
> "(1) To the extent of the interest therein as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, that where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person:     \*     \*     \*".

■ Plaintiff contends that as the joint tenancies created in conformity with the 1944 property settlement agreement involved contributions of individually owned Lincoln stock of both plaintiff and decedent the joint tenancies so created, and those maintained under the agreement, were the result of an arm's length transaction supported by consideration and were therefore includable in the gross estate only to the extent of decedent's contribution. But the statute does not so provide. The observation made in Dimock v. Corwin, 306 U.S. 363, 373, 59 S.Ct. 551, 556, 83 L.Ed. 763, is pertinent:

> "The surviving joint tenant in this case comes squarely within the governing statutory provision because she 'received' and 'acquired' all of the property contributed by her to the joint tenancy 'from the decedent for less than an adequate and full consideration in money or money's worth'. This language adopted by Congress clearly and unambiguously indicates the purpose to tax the entire value of a joint tenancy under circumstances shown by this record. We are without authority to add language to the statute directly contrary to such a clearly expressed purpose."

Under the terms of the statute it is immaterial whether or not there was consideration for establishing the joint tenancy. The test for exclusion of any item of property contributed to the joint tenancy is whether that property originally belonged to the survivor, and, if so, was not received or acquired from the decedent for less than full value in money or money's worth.

■■ In order to establish the excludability, wholly or partially, of any item held jointly with decedent at his death plaintiff had the burden of proving that the item or portion which she would exclude from decedent's gross estate was originally hers and if acquired from decedent was purchased with adequate and full consideration in money or money's worth. McGrew's Estate v.

Commissioner of Internal Revenue, 6 Cir., 135 F.2d 158, 148 A.L.R. 1045. The record sustains the District Court's finding that the plaintiff wholly failed to sustain this burden of proof. Plaintiff, herself, testified that she did not know the amount of her deposits or withdrawals from the joint bank account from which the additional stock purchases were made and that the decedent made such purchases. By virtue of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Rule 52(a) the court's finding is binding on us. Cf. Harvey v. United States, 7 Cir., 185 F.2d 463, 468, where the jointly held property was not the gift property itself, in either its original or a transmuted form, but property traceable to profits made through sales of the original gift property and successive reinvestments of the proceeds of such sales, or the rents, interest and dividends produced by such property in its original or converted form while title thereto was in the wife, wherein this court said:

"While it may well be that the record would have supported the inference that the gifts were traceable into the property held in joint tenancy, the court had before it evidence sufficient to sustain the contrary inference and, by virtue of the provisions of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to make it binding on this court."

In Harvey the widow testified as to the specific amounts she had contributed toward the acquisition of various items in jointly held property and supported her statements by producing checks and other documents which were introduced in evidence. Such testimony and evidence serves to distinguish the instant case on the facts. The plaintiff failed to meet the burden of proof required.

Plaintiff also contends that the 1943 stock dividend received by her on the original 3000 shares of Lincoln stock given her by decedent in 1929, on the 565 shares thereafter acquired in her sole name, one-half of said stock dividend on the 513 shares acquired jointly, and the 1946 stock dividend on those shares and interest and the 1943 dividend stock attributable thereto, represents property originally hers which was not acquired from decedent and therefore constitute excludable items.

An ordinary stock dividend is merely certified evidence of the capitalization of some amount of undivided surplus. It does not add anything to or take anything away from a stockholder's proportionate interest in the corporation. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, Blair v. Dustin's Estate, 2 Cir., 30 F.2d 774, McDonald v. Maxwell, 274 U.S. 91, 47 S.Ct. 497, 71 L.Ed. 942 and Gibbons v. Mahon, 136 U.S. 549, 10 S.Ct. 1057, 34 L.Ed. 525.

In Gibbons it was pointed out (136 U.S. at pages 559–560, 10 S.Ct. at page 1059):

"A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones."

There is nothing in the record before us which would indicate that McGehee v. Commissioner, 5 Cir., 260 F.2d 818, cited by plaintiff, has any application. Cf. Tuck v. United States, D.C.N.D.Cal., 172 F.Supp. 890. There is no evidence

that the stock dividends were other than capitalization of prior earned corporate profits. They did not represent an increment to what plaintiff already owned but merely evidence thereof in a new form.

 There was evidence to support the District Court's finding that the gifts of stock and the automobile to decedent's daughter and son-in-law were made in contemplation of death. These transfers were made within two years of decedent's death at age ninety-one, during his last illness and at a time when it was known that he could not recover. The differentiating factor between an *inter vivos* gift and one made in contemplation of death is the transferor's motive. If the motive which induces the transfer is the sort which leads to testamentary disposition, then the gift is one made in contemplation of death. The question as to the dominant motive is a question of fact and we are required to accept the District Court's findings if supported by the evidence. Allen v. Trust Co. of Georgia, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367; Colorado Nat. Bank of Denver v. Commissioner, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20; Commissioner of Internal Revenue v. Gidwitz' Estate, 7 Cir., 196 F.2d 813. Among factors to be considered are the decedent's physical condition and age at the time of the transfer, whether the gifts are substantial and not the kind which have frequently been made in prior years. Humphrey's Estate v. Commissioner, 5 Cir., 162 F.2d 1. The circumstances of the gifts here involved support the District Court's finding that they were made in contemplation of death. They were therefore, as to decedent's interest, properly includable in his gross estate under the provisions of Section 811(c) of the Internal Revenue Code of 1939 (26 U.S.C. 1952 ed. § 811). The judgment of the District Court is therefore affirmed.

Affirmed.