ESTATE of John SCHLOSSER, Deceased. Raymond SCHLOSSER, Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13055.

United States Court of Appeals Third Circuit.

Argued Feb. 4, 1960.

Decided March 30, 1960.

John M. McNally, Jr., Philadelphia (Vernon L. Stover, Philadelphia, on the brief), for petitioner.

Victor A. Altman, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before GOODRICH, HASTIE and FORMAN, Circuit Judges.

HASTIE, Circuit Judge.

This is an estate tax case in which the petitioning executor chose, as authorized by Section 811(j) of the Internal Revenue Code of 1939,[1] to value the gross estate of the decedent by valuing "the property included therein on the date of the decedent's death as of the date one year after the decedent's death". The question is whether a true stock dividend which was declared during the year immediately following decedent's death should be included in the executor's year-end valuation of the decedent's stock for estate tax purposes. The tax court held that the stock dividend was includable. 32 T.C. 262. The executor has brought that decision here for review.

The decedent died owning some 10,000 shares of common stock of the Sun Oil Company. A few months later the Board of Directors of that corporation passed the following resolution:

"Resolved, That out of the authorized, unissued Common Stock of

1. The subsection reads:

"(j) *Optional valuation.* If the executor so elects upon his return (if filed within the time proscribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, * *." 26 U.S.C., 1952 ed. § 811(j).

the Company a stock dividend be and the same is hereby declared to be issued on December 15, 1953, to the holders of Common Stock of the Company of record at the close of business November 13, 1953, in proportion to their respective holdings of Common Stock on that date, at the rate of eight (8) shares of Common Stock for each one hundred (100) shares then held, said stock when so issued to be full-paid and non-assessable, and

"Be It Further Resolved, That said stock when so issued be charged against the surplus of the Company at the rate of Sixty-five Dollars ($65.00) per share * * *."

This resolution was duly carried out by the distribution of eight authorized but theretofore unissued shares of common stock for each 100 issued and outstanding shares of common. At the same time a corresponding increase in permanent capitalization was achieved by the transfer of $65 for each such newly issued share from earned surplus to the common stock account.

The surplus as determined, after the stockholder's death, at the beginning of the year during which the dividend was declared was sufficient to cover both this stock dividend and a cash dividend declared in the same year. There were additional earnings during the year of the dividend and before its declaration, but the present record indicates that these additional earnings were somewhat less than the sum of the currently declared stock and cash dividends. However, as we view the case nothing turns on this point.

It is not disputed that the cash dividend was current income of the estate and as such was properly excluded from the year-end valuation of the decedent's stock. Maas v. Higgins, 1941, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940. In contrast, however, the Commissioner says and the tax court has agreed that the true stock dividend of proportional amounts of common stock distributed to all common stockholders is not in legal contemplation new property of the estate but rather is a further fractionalizing of existing stock ownership, reflecting merely an appreciation in the value of the old property.

We think the analysis made by the Commissioner and the tax court is correct. Indeed, it is a logical consquence of the doctrine of Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521. There a true stock dividend was held to be insufficiently differentiated from the capital stock which the stockholder already owned to be income. Here, by the same token, such a dividend cannot be said to constitute new property distinct from the stock owned when the dividend was declared. In neither case is it significant that additional certificates have been issued. For the ownership rights embodied in the larger number of certificates are identical with those represented by the original stock. The true stock dividend has "merely changed the form of the estate's investment * * * by increasing the number of its shares." See McDonald v. Maxwell, 1927, 274 U.S. 91, 98, 47 S.Ct. 497, 499, 71 L.Ed. 942. There has been no step toward the severance or distribution of part of the corporate estate.

Admittedly, the recent undistributed earnings of the corporation which underlay the stock dividend could be considered new property to the corporation. But unless the corporate entity be ignored, such accessions to the corporate estate benefit the stockholder only as an increase in the value of his stock. In the absence of any dividend it would not even be argued that the corporate veil be pierced or that a stockholder acquires new property when the corporation earns a profit or accumulates a surplus. The only noteworthy additional circumstance involved in the issuance of a true stock dividend is the transfer of corporate accumulations from surplus to permanent capitalization, the very antithesis of transforming corporate property into property of the stockholder. Thus, the economic advantage of corporate earning to the stockholder, whether

viewed before or after its translation into a true stock dividend, cannot rationally be analysed as vesting in the stockholder any new property. See 2 Paul, Federal Estate and Gift Taxation, 1942, 1342–43. To the extent that contrary implications appear in McGehee v. Commissioner, 5 Cir., 1958, 260 F.2d 818, a controversy concerning a stock dividend on capital stock which had been transferred in contemplation of death, upon which the executor relies, we disagree with that case.

This analysis also suggests the answer to a separate contention of the executor that a Treasury Regulation concerning the method of valuing stock in a decedent's estate a year after the owner's death authorizes the exclusion of such a stock dividend as we have here. Section 81.11 of Treasury Regulation 105, promulgated under the Internal Revenue Code of 1939, does say that "ordinary dividends out of earnings and profits, whether in cash or in shares of the corporation or in other property, declared to stockholders of record after the date of the decedent's death are 'excluded property' and are not to be valued under the optional valuation method."

In our view the quoted regulation is not applicable to this case. To be excluded under that regulation dividends must be both "ordinary" and "out of earnings and profits", a description which aptly describes only such distributions as would constitute income to the recipient. The normal cash dividend is of the described type. So are stock dividends which change the stockholder's proportionate interest in the corporation or give him something different in kind from his original stock. See, for example, the situation analysed in Koshland v. Helvering, 1936, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268. But, as has been pointed out, we are now concerned with a kind of dividend which is attended, not by any step toward severance of earnings and profits from the corporate estate, but rather by the antithetical process of adding to the permanent capitalization. And the stockholder has nothing of significance after the dividend has issued which he did not have before. It therefore seems correct to say that the present kind of stock dividend is not "ordinary" and "out of earnings and profits", within a reasonable construction of the regulation.

For these reasons the judgment of the Tax Court will be affirmed.