**Agnes J. TUCK, As Executrix of the Estate of George A. Tuck, Deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16597.**

United States Court of Appeals Ninth Circuit.

Sept. 15, 1960.

Freed & Freed, Eli Freed, Kurt W. Melchior, San Francisco, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Louise Foster, Attys., Dept. of Justice, Washington, D. C., Lynn J. Gillard, U. S. Atty., John Kaplan, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before ORR, BARNES and JERTBERG, Circuit Judges.

ORR, Circuit Judge.

George A. Tuck, hereafter referred to as decedent, died on August 22, 1952. Appellant is his widow and the duly appointed executrix of his estate. As executrix she filed Form 706, Estate Tax Return and paid the tax shown therein in the amount of the $45,874.70. Thereafter, appellee United States of America, acting through its Commissioner of Internal Revenue, assessed additional taxes of $28,091.05 against the estate of decedent. Appellant paid the $28,091.05 and thereafter instituted this action to recover said amount together with an additional $3,000 which she claims was erroneously paid originally.

Three basic issues are presented for our determination: (1) Was stock received in a stock dividend declared by Atlas Heating & Ventilating Co. (hereinafter Atlas) includable in the gross estate of decedent? (2) Were the fair market values of the Tuck stock in Atlas and in International Sales Corporation properly determined in assessing additional estate taxes? (3) Should $6,-399.65 of a contribution made to Atlas by the Tuck family trust be allowed as a deduction from decedent's gross estate? We proceed to a discussion of these issues in turn.

° The Stock Dividend Issue.

25,111 shares of the common stock of Atlas were owned by decedent and appellant as joint tenants at the date of decedent's death. It appears that sometime between 1915 and 1919 decedent made a gift of a large number of shares of Atlas common stock to appellant. In July of 1921 the Articles of Incorporation of Atlas were amended to increase its capitalization from $10,000, represented by 10,000 shares of $1 par value each, to $250,000, represented by 250,000 shares of $1 par value. The Board of Directors of the corporation then passed a resolution stating that the corporation had a surplus of some $76,151.08 and declaring a stock dividend of six new shares for each share then held by each stockholder. Approximately one year later appellant returned all of her Atlas stock, including the dividend shares, to the decedent. It is stipulated that 16,198.65 shares of

the dividend stock was included in the 25,111 shares held in joint tenancy at decedent's death. Appellee included all 25,111 shares in decedent's gross estate. Appellant does not object to the taxation of the shares originally given to her by the decedent and later returned to him, but she does claim that the dividend shares originally belonged to her and therefore should not have been included in decedent's gross estate.

The statute applicable to this situation is Internal Revenue Code of 1939, § 811 (e)(1), 26 U.S.C.A. § 811(e)(1).[1] The trial court found that the original gift of stock from decedent to appellant occurred on or about February 4, 1919, and that the $76,151.08 of earned surplus at the time of the stock dividend in 1921 was formed out of profits earned prior to February 4, 1919. Said court concluded that all the stock issued to appellant in 1921 originally belonged to decedent, within the meaning of § 811(e)(1). This conclusion is challenged.

■ The meaning of § 811(e)(1) resides in the interpretation to be placed upon the words "originally belonged". If these words refer only to a technical concept of physical ownership of the specific property which ends up in the joint tenancy, then appellant's contention is correct, because it is clear that she was the original owner of the slips of paper which manifested the stock dividend. In other words, one possible interpretation is that the statute only requires that under principles of property law the survivor be the original owner of the property which ends up being held in joint tenancy with the decedent at the time of

the latter's death. However, a careful reading of the statute does not permit such an interpretation. § 811(e)(1) says that property which originally belonged to the survivor shall be excluded from the gross estate, except that where part of such property "or part of the consideration with which such property was acquired" was acquired by the survivor from the decedent, such part shall be included in the estate. Thus, if the decedent furnished the consideration with which the property was acquired, this property is to be included in his estate, regardless of the fact that he never owned it in a property-law sense. The fact that the decedent furnishes the *means of acquiring* the property, rather than the actual property itself, is not intended to change the tax result. The answer is found in whether the decedent supplied the funds eventually used to acquire the property. It is the intention of the statute to include in the gross estate all jointly-owned property which is traceable to an outlay of funds which were in the first instance the decedent's own. See Stuart v. Hassett, D.C.D.Mass.1941, 41 F.Supp. 905; Elizabeth F. Bowditch, Executrix, 1931, 23 B.T.A. 1265, 1266; Estate of Edward T. Kelley, 1931, 22 B.T.A. 421.

With the purpose of § 811(e)(1) in mind, we next examine the nature of a stock dividend. A share of stock is itself a worthless piece of paper. Its value rests solely in that it represents ownership of a certain fraction of the corporation which issued it, with the rights attached to that ownership. Thus if a person owns one of the only two outstanding

---

1. § 811 Gross Estate
 "The value of the gross estate of the decedent shall be determined by including the value * * * of all property * *
 "(e) Joint interests.
 "(1) To the extent of the interest therein held as joint tenants by the decedent and any other person, * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and

full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: * * *."

shares of stock issued by a corporation, this entitles him to one half of any dividend, one half of the net assets should the corporation be liquidated, and one half of the votes in any shareholder action. If the corporation then declares a six-for-one stock dividend, this stockholder will own seven of fourteen shares instead of one of two, but these seven shares represent exactly the same ownership interest and the same rights to vote and receive dividends and asset distributions that the one share represented immediately before the dividend. "What has happened is that the plaintiff's old certificates have been split up in effect and have diminished in value to the extent of the value of the new." Eisner v. Macomber, 1919, 252 U.S. 189, 203, 40 S.Ct. 189, 192, 64 L.Ed. 521. The new and old shares together represent the same value—the same proportional interest in the corporate properties—that had before been represented by the old alone. McDonald v. Maxwell, 1927, 274 U.S. 91, 47 S.Ct. 497, 71 L.Ed. 942; In re Schlosser's Estate (Schlosser v. Commissioner of Internal Revenue), 3 Cir., 1960, 277 F.2d 268; Blair v. Dustin's Estate, 2 Cir., 1929, 30 F.2d 774. The only major significance on the corporate side is that past earnings are permanently capitalized and new shares of stock are issued to represent this new capital.

■ It seems clear that such a stock dividend, with one possible exception to be discussed later, does not qualify for the exception provided in § 811(e)(1) for property "originally owned" by the survivor. The added shares of stock are acquired solely as a result of possessing the ownership interest which was given to the survivor by the decedent; they add nothing to that interest but merely increase the number of stock certificates which represent it. The only consideration given for all of the stock is the funds paid out by the decedent for the original shares. The survivor owns the new pieces of paper, but the decedent owned the interest which they represent. For the purposes of § 811(e)(1) the survivor can not be deemed the "original owner" of the dividend shares. One may approach this question as did the Ohio Supreme Court in Millar v. Mountcastle, 1954, 161 Ohio St. 409, 119 N.E.2d 626, 49 A.L.R.2d 381 and say that the 34,545 shares after the dividend were the same property as the 4,935 shares before the dividend and those were originally owned by the decedent, or as the Second Circuit did in Blair v. Dustin's Estate, 2 Cir., 1929, 30 F.2d 774, in holding that the new shares pro tanto can be identified as having been acquired in exchange for property received from the decedent.[2] In either event, both the old and the new shares must be included in decedent's estate.

■ A possible exception to the rule hereinabove stated would be in a situation where part or all of the earnings capitalized in the stock dividend were profits earned during the time that the survivor owned the original stock. It is well settled that cash dividends paid out to the survivor during this period are his own original property for purposes of § 811. See Estate of Ralph Owen Howard, 9 T.C. 1192 (1947). The Fifth Circuit has extended this to a case where a corporation gave yearly stock dividends representing a capitalization of current earnings. McGehee v. Commissioner of Internal Revenue, 5 Cir., 1958, 260 F.2d 818. That court felt that it is only the interest of the decedent of which a transfer has been made which is included for estate tax purposes, and that he had no interest in the profits which were earned later and which were capitalized by the yearly stock dividends. No proof of earnings of Atlas subsequent to the acquisition of the stock by appellant is before us. It is settled law that the taxpayer has the burden of proving the facts necessary to bring the estate within the exception in § 811(e)(1). English v. United States, 7 Cir., 1959, 270 F.2d 876;

---

**2.** "Formally, perhaps, there has not been an 'exchange', but the identity is established beyond peradventure." 30 F.2d at page 775.

**410**

McGraw's Estate v. Commissioner of Internal Revenue, 6 Cir., 1943, 135 F.2d 158, 148 A.L.R. 1045; Foster v. Commissioner of Internal Revenue, 9 Cir., 1937, 90 F.2d 486, affirmed per curiam 1938, 303 U.S. 618, 58 S.Ct. 525, 82 L.Ed. 1083. See also Burnet v. Houston, 1931, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991.

 We conclude that the dividend shares of Atlas common stock were properly included in the gross estate of decedent. English v. United States, 7 Cir., 1959, 270 F.2d 876.

### The Stock Valuation Issue.

Appellant contends that the evidence introduced by the government and accepted by the trial court as to the values to be attributed to the estate's stock in Atlas and in International Sales Corporation is not substantial. Appellant offered the testimony of two analysts whom appellant hired to determine the values of the two stocks. The government offered the testimony of Martin G. Hendricks, who had been evaluating the securities of closely held corporations for the Estate and Gift Tax Division of the Internal Revenue Service for over ten years. Appellant claims that Mr. Hendricks was not qualified to testify as an expert on stock evaluation and attacks his testimony on the ground that his experience had been solely as a government appraiser and that he had the government's interests at heart. Even so, this did not disqualify the witness from testifying as an expert at evaluating such securities; it could only go to the weight of his testimony, which was for the trial court to determine. The record contains much conflicting testimony as to the value of the two corporations' stocks and the correctness of the methods used in reaching the conflicting valuations. The witnesses apparently agreed that computing the value of the untraded securities of a closely held corporation is by no means an exact science. There is ample evidence to support the conclusions reached by the trial court.

### The Capital Contribution Issue.

In 1933 a trust, revocable at the pleasure of the decedent, contributed sums of money to Atlas. Appellant claims that one-half of this was joint tenancy property to which she had contributed, and that $6,399.65 of Atlas's value should therefore be excluded from the gross estate under § 811(e)(1). We see no merit in this contention since the money belonged to the corporation after the contribution and was no longer joint tenancy property. Also, the trial court's finding that appellant failed to show that she had any interest in these sums except insofar as she was an income beneficiary at the pleasure of the decedent is supported by the evidence.

Judgment affirmed.