**Erma Minna LISKA, et al.,**
**Plaintiffs-Appellants,**

v.

**FIRST NATIONAL BANK IN SIOUX CITY, Iowa, Defendants-Appellees.**

No. 2–65903.

Court of Appeals of Iowa.

March 23, 1982.

---

R. E. Franck, Denison, and Hutchison & Hurst, Sioux City, for plaintiffs-appellants.

A. J. Stoik of Klass, Whicher & Mishine, Sioux City, for defendants-appellees.

Heard by OXBERGER, C. J., and DONIELSON and JOHNSON, JJ.

JOHNSON, Judge.

Plaintiffs, beneficiaries of the testamentary trust of Dr. Edward J. Liska, appeal from trial court's judgment for defendant, First National Bank in Sioux City, in their action for damages allegedly caused by defendant's fraud and negligence committed in its capacity as trustee of Dr. Edward J. Liska's inter vivos trust and executor of his estate. They contend that trial court erred in finding: 1) that defendant reasonably relied on its attorney and on plaintiff-widow's silence as to what assets to include in her husband's (decedent's) estate; 2) that defendant did not decide what assets to include in the trust and had no duty to advise of the estate tax consequences of the placement of those assets; 3) that defend-

ant did not breach its duty to purchase certain bonds for payment of estate taxes; 4) that defendant committed no fraud; and 5) that certain plaintiffs' claims were barred by laches. They also allege that the court erred in not assessing punitive damages and in making other rulings relating to damages. We affirm.

Plaintiffs are the children and grandchildren of Erma and Dr. Edward J. Liska.[1] In October, 1969, Erma and Edward Liska turned over their assets, consisting mainly of stocks and bonds, to defendant-bank so that a revocable inter vivos trust could be established for each of them. Edward died shortly thereafter, on November 21, 1969, and, pursuant to the trust agreement, his trust assets went into his estate. His will provided, inter alia, that part of the estate assets, comprised principally of the corpus of the inter vivos trust, was to be placed in a testamentary trust for plaintiffs' benefit. The executor's final report was filed in July, 1971. Plaintiffs filed their petition in this action on June 22, 1976, contending that defendant negligently or intentionally included in Edward's inter vivos trust all of the couple's jointly held property, as well as property owned solely by Erma, and that this resulted in the payment of more than $48,000 in excess estate and inheritance taxes. The petition also alleged that plaintiffs suffered mental anguish upon discovery of the defendant's breach of its contractual duty by improperly allocating the assets.[2] Finally, plaintiffs sought a refund of all executor's, trustee's, and attorney's fees paid to the defendant because the services performed were allegedly without value.

Defendant's answer denied liability and also raised affirmative defenses of acquiescence, waiver, estoppel, and laches. Defendant further sought indemnity from Erma Liska for any damages it might have to pay to plaintiffs. Following trial, the court dismissed plaintiffs' petition due to their failure to prove any breach of duty owed by defendant to plaintiffs or any damages resulting therefrom. This appeal followed.

I. Scope of Review. Since this case was tried in equity, our review is **de novo.** Iowa R.App.P.4. Although we are not bound by trial court's findings, we give weight to those findings, especially where credibility of witnesses is involved. Iowa R.App.P.14(f)(7).

Plaintiffs' brief raises six issues for review; however, we will divide the issues and address first, those issues relating to defendant's acts as trustee of the inter vivos trust; second, those issues relating to defendant's acts as executor; and third, the remaining issues.

II. Defendant's Acts as Trustee of the Inter Vivos Trust.

A. Establishment of the Revocable Inter Vivos Trust. Plaintiffs assert that defendant initially breached its duty as a professional fiduciary by improperly placing all of the Liskas' joint tenancy assets in Edward Liska's inter vivos trust instead of severing the joint tenancy or advising the Liskas to seek independent legal counsel regarding the estate tax consequences of placing such property in trust. They assert in their brief that "[b]ecause the Bank endeavored to estate plan for the Liskas and in fact drew the revocable trust without an attorney, they [sic] endeavored to act as an attorney for the Liskas. Because they [sic] undertook to do so, the Bank owed them the standard of care of an attorney." We agree with plaintiffs' statement of the law that defendant owed plaintiffs a duty to act in a manner commensurate with the degree of skill defendant represented it possessed. *See* 1 *Restatement (Second) Trusts* § 174 (1959). *See also* 2 Scott, *Trusts* § 174 at

---

1. The widow, Erma Liska, also individually filed a separate action against the bank. Trial court subsequently sustained defendant's motion for summary judgment in the widow's individual action and as to the widow in this multiple party action. This court reversed trial court's judgment in those actions which were consolidated on appeal. *Liska v. First National Bank in Sioux City*, 310 N.W.2d 531 (Iowa App.1981).

2. Plaintiffs offered no evidence in support of this cause of action.

1410–13 (3d ed. 1967), and cases cited therein. *Cf. Stark v. U. S. Trust Co.*, 445 F.Supp. 670, 680 (S.D.N.Y.1978). From our review of the record we find no breach of that duty.

On October 3, 1969, at Dr. Liska's request, Erma Liska delivered a substantial amount of the Liskas' property to defendant. Defendant prepared an inventory of these assets and Erma Liska was given a receipt for them. Six days later, on October 9, 1969, defendant's senior trust officer and vice-president, Robert A. Pecaut, presented the Liskas with "standard form" revocable trust instruments, which the Liskas executed. The trust instruments were mimeographed forms, prepared by defendant and approved by an attorney, which defendant used for investment management accounts. Trust instruments designed for other purposes were ordinarily prepared by the client's attorney. The record shows that, shortly after the trusts were established on October 9th, defendant sent Dr. and Mrs. Liska an initial accounting of the trusts showing the allocation of property to the respective trust accounts. Neither of the Liskas made any complaint regarding these allocations.

The evidence further establishes that it was defendant's policy in October, 1969, to determine ownership of property before assigning it to a trust account, to require signatures of both parties to joint assets if the assets consisted of stocks, bonds, or similar type assets,[3] to ask the settlor about his or her desire concerning disposition of assets to be placed in trust, and to advise people with substantial amounts of joint tenancy property to see an attorney about pre-death severance of the joint tenancy. It also was defendant's policy to advise people that joint tenancy might not be the most advantageous way to hold property and that, depending upon the total assets, they should see an attorney for estate planning. Mr. Pecaut testified that he told people that there may be times when joint tenancy was not really what they intended, would inquire into their true intent, and would advise that it might be best to hold the property in the name of one or the other, or as tenants in common. While Mr. Pecaut could not recall specifically, some eight years later, whether he advised the Liskas to consult an attorney with regard to gift and estate tax consequences, it would have been a deviation from bank policy not to have done so. He also stated "I believe that it [recommendation that the Liskas see an attorney] was done, since I signed the receipt, and I would have been the one that talked to them at that time."

Balanced against this evidence is Erma Liska's testimony, ten years later, that no one made any inquiry as to ownership of the property. While we have no reason to doubt that Erma Liska could not recall such advice when this matter finally came to trial, we cannot conclude from this record that plaintiffs have met their burden of proof that defendant negligently made any decision about placement of the property into the Liskas' trusts or that defendant undertook any estate planning function for the Liskas. Although plaintiffs introduced expert testimony regarding the standard of care defendants would have owed had it offered estate planning advice, this testimony is not persuasive in light of our finding there was no such undertaking.

■ B. Purchase of "Flower Bonds." Plaintiffs also claim that trial court erred in finding defendant did not breach its duty to purchase U.S. Treasury Bonds, flower bonds, and thereby save approximately one-third of the estate taxes due on Dr. Liska's estate. We disagree with plaintiffs' assertion.

On October 21, 1969, defendant obtained Dr. Liska's authorization to liquidate certain joint assets for purchase of flower bonds. To effect this purpose, eleven days prior to Dr. Liska's death, defendant had cashed jointly held assets and placed in Dr. Liska's inter vivos trust approximately $51,-

---

**3.** Mr. Pecaut testified that it was the bank's policy to require signatures of both parties if only one of the joint owners brought securities

to the bank for placement into the trust account.

000. The testimony at trial revealed that such bonds are poor investments, generally, because they pay interest at a rate far below comparably priced securities, but are attractive vehicles for payment of estate taxes because they are purchased at a discount (approximately 30% in November, 1969) and are sold at par value upon the owner's death. Because of their poor investment quality and singularity of purpose, such bonds "are normally not purchased until a person is 'in extremis.'" Streng, 11–8th T.M., Estates, Gifts and Trusts—Planning X(f)(3) at A–145 (1979).

In assessing defendant's acts, trial court concluded:

> Any decision which holds the Defendant was negligent in failing to complete the Flower Bond conversion program is tantamount to a holding that Defendant is to be held to the standard of care imposed upon a fortune teller. There is no evidence to support a finding that Defendant knew when Dr. Liska would die, and there is no evidence to suggest that Defendant was not proceeding in the customary fashion and with the requisite amount of speed, in converting Dr. Liska's estate.

As trustee of Dr. Liska's revocable trust, defendant had a duty to exercise ordinary and reasonable skill in managing the assets of the trust so as to make those assets productive. 1 *Restatement (Second) Trusts* § 181 (1959). Section 633.123, The Code 1981, provides in pertinent part:

> [A] fiduciary shall exercise the judgment and care under the circumstances then prevailing, which persons of prudence, discretion and intelligence exercise in the management of their own affairs, not for the purpose of speculation, but with regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety, of their capital.

While plaintiffs offered evidence that flower bonds could be purchased in less

than a day and that, on the day of Dr. Liska's death, there was enough cash in his revocable trust to purchase an amount of flower bonds sufficient to pay the estate taxes which were ultimately assessed against his estate, this alone proves nothing. The record shows that sometime in 1965, Dr. Liska contracted an unspecified form of cancer, which ultimately was fatal. However, he did not suffer from this illness constantly, and had long and frequent periods when his cancer was in remission. In 1969, the year of his death, for example, he was able to tour Europe with Mrs. Liska and continued to actively practice medicine until the day of his final admission into the hospital. Although defendant's employees did discuss the trust matters with Dr. Liska while he was in a Sioux City hospital,[4] we find no evidence in the record that defendant was aware of the imminent possibility of Dr. Liska's death until after it had happened.

From the record before us, we conclude that, at the time Dr. Liska died, defendant was not chargeable with knowledge of his extreme condition, despite plaintiffs' assertion that Mr. Pecaut would not have suggested the purchase of flower bonds if he was unaware of Dr. Liska's imminent death, and did not have enough information to determine the actual extent of Dr. Liska's estate for purposes of calculating estate tax liabilities. In the absence of such proof, we cannot hold defendant liable for breach of any duty to purchase flower bonds.

III. Defendant's Acts as Executor of Edward Liska's Estate. Plaintiffs further contend that defendant's alleged breach of its fiduciary duty, in its capacity as executor of Edward Liska's estate, resulted in the overpayment of taxes because 1) all joint tenancy property was reported at full value on Dr. Liska's estate and inheritance tax returns without regard to any contribution Erma Liska may have made to the purchase price of the assets, 2) defend-

---

**4.** Approximately one month prior to his death, Dr. Liska was transferred to a hospital in Roch-

ester, Minnesota.

ant improperly included certain property owned solely by Erma Liska in Edward Liska's taxable estate, and 3) defendant improperly included certain property in Edward Liska's taxable estate as gifts made in contemplation of death. Here, as in the challenge to defendant's acts as trustee, plaintiffs' principle focus is on the jointly held property. In this regard, trial court found:

> ... It is apparent from the record, however, that Defendant in preparing the inventory and tax returns for the estate relied heavily upon the advice of its attorney, Mr. Marks, and upon the silence, and implied acquiescence, of Mrs. Liska. Stanley Corbett [a practicing attorney with substantial probate experience] testified that such reliance was reasonable and the court so finds. It follows, therefore, that Defendant cannot and should not be held liable for the erroneous inclusion [of Erma Liska's separate property].

> \*   \*   \*   \*   \*   \*

All decisions concerning treatment of joint tenancy property and gifts in contemplation of death were made by Mr. Marks, attorney for the executor. As executor, First National Bank relied entirely on Mr. Marks to make these decisions. Such reliance was entirely customary and justified in these circumstances. Mrs. Liska made no complaint about the assets included in the Preliminary Inheritance Tax Report and the Probate Inventory until long after the Bank could take action to amend.

Plaintiffs allege that trial court erred in finding defendant reasonably and justifiably relied on its attorney and Erma Liska's silence as to ownership of the property. Plaintiffs' primary argument is that, due to Erma Liska's lack of business experience, defendant could not rely on her statements of ownership, but had a duty to make an independent examination of the probate inventory to ascertain true ownership of the property listed therein and to report to its attorney its knowledge of Erma Liska's substantial separate income in order to establish her contribution to the purchase of the jointly held property. We are not persuaded by plaintiffs' argument.

The pertinent facts reveal that Dr. Liska's will was admitted to probate on November 26, 1969, and named defendant as executor. Defendant thereafter retained Mr. Bernard B. Marks as attorney for the executor. From a list of assets supplied by defendant, Mr. Marks prepared the probate inventory. Shortly after the probate inventory was prepared, defendant signed the Liskas' 1969 Iowa income tax return which shows that Mrs. Liska reported separate income in excess of $14,000. Additionally, the Liskas' income tax returns for the years 1948 through 1969 show that Erma Liska reported approximately $130,000 income, net of taxes.

At trial, Mr. Marks testified that, during the first three or four months after the probate of the estate commenced, and before preparation of the probate inventory, he had a number of conferences with Erma Liska, which included discussions about ownership of the property, in his efforts to determine the estate tax treatment of certain assets. In reference to a conversation about two bonds inscribed "Mrs. Erma M. Liska or Dr. Edward J. Liska," Mr. Marks testified as follows:

> Normally, when the wife's name is first on an inscribed bond, we assume that she contributed the consideration for the purchase. I had hoped so and wanted to— and did pursue that to find out if they did buy these bonds with her separate funds in the hopes of excluding them from the taxable estate. I inquired about that, and she answered that she had never had any property separate from her husband. I then questioned her about whether or not she had inherited any property from anybody, whether or not she had worked and built up a fund, either prior to marriage or an independent fund either prior to marriage or after marriage. The answer was no. I then went further and asked if she had received property from Dr. Liska. The income from which could be identified as having been used to purchase joint assets with her husband; and she again replied negatively.

Q: Did you have a direct discussion about—let me withdraw that. These questions and answers you received from her were made by you to determine whether the joint tenancy securities would all be taxable for death tax purposes.

A: First, we talked about these two bonds; and then I expanded my inquiries to include all joint property that was in the estate and received the same answers.

Q: Did you ask her who actually purchased the joint tenancy property?

A: Yes, sir.

Q: What answer did you get?

A: She told me that Dr. Liska had.

We note that nearly all the property listed on the tax return as jointly owned property was, in fact, property which was included in the corpus of Edward Liska's revocable trust. Our discussion above exonerates defendant from any liability relative to creation of that trust. Plaintiffs, nonetheless, maintain that defendant could have remedied the situation as executor by fulfilling its duty to investigate that which it had done as trustee. We do not agree.

Giving deference to trial court's superior ability to assess credibility of witnesses, we conclude, despite Erma Liska's lack of business expertise, that defendant, through its attorney, properly relied on her answers when questioned about ownership of the listed property. We further agree with trial court's conclusion that the plaintiffs made no attempt to trace the Liskas' funds which were deposited and commingled in one joint account. Simply saying that the surviving joint tenant had separate income, without more, is not sufficient to establish that the survivor contributed to the purchase of the asset so that all or a portion of the joint tenancy property would be excluded from the estate of the first to die. *See English v. United States*, 270 F.2d 876, 879–81 (7th Cir. 1959). *See also* Int. Rev.Code of 1954 § 2040. We further find that plaintiffs introduced no evidence to support a finding that defendant's acts in reporting certain gifts as gifts in contemplation of death was in any way improper.

In so doing, defendant was entitled to and did, in fact, rely on the advise of its attorney who, in turn, had made the decision to classify these gifts only after a conference with Erma Liska. *See generally* 31 Am. Jur.2d *Executives and Administrators* § 219 (1967).

IV. Remaining Issues. Plaintiffs also assert that trial court erred in holding certain plaintiffs' claims were barred by laches, in finding no evidence of fraud, in refusing to assess punitive damages, and in excluding certain evidence of damages. In light of our resolution of the issues above, we need not address these issues.

Having found that defendant committed no breach of its fiduciary duties, we conclude that trial court properly entered judgment in favor of defendant.

AFFIRMED.

SNELL and CARTER, JJ., take no part.