Melanie B. SWARTZ and Charles M. Goldman, Executors of Estate of Jacob Swartz

v.

UNITED STATES of America.

Civ. A. No. 60-209.

United States District Court
D. Massachusetts.

March 30, 1960.

Slater & Goldman, Charles M. Goldman, Boston, Mass., for plaintiffs.

Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., R. Michael Duncan, Attorney, Dept. of Justice, Washington, D. C., for defendant.

WYZANSKI, District Judge.

This is an action to recover an alleged overpayment of an estate tax. The sole question presented is whether $60,000 in United States Series G bonds, held in the joint names of decedent and his wife, were properly included in decedent's gross estate under the provisions of § 2040 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2040.

September 25, 1928 the decedent gave his wife 300 voting trust certificates of the common stock of the Plymouth Rubber Co.

There is no agreement as to what the then value of each of those certificates was. But I find that the book value of $66.86 for each share of common stock is a fair figure of value for each certificate. This seems to me more reliable than (1) a figure based upon net earnings after taxes per share of common stock, which in the years 1926, 1927, and 1928 were approximately $4, $14, and $5, or (2) a figure based on dividends which in the three years were zero, 50 cents, and $2, or (3) the $30⅜ per share which the company had paid in 1927, a year when the company's profits were about a third of what they were in 1928 and before the speculative fever of 1928 was under way, or (4) some combination of those three items and the book value.

Later the wife exchanged those certificates for 300 shares of common stock of the same company. Then in 1947 the wife exchanged those 300 shares for 15,000 new shares of the same company, pursuant to a split-up. April 8, 1947

she sold 7,500 shares of these new shares for $89,062.50. The wife paid a federal income tax upon the profits she realized. In accordance with the applicable law, she paid a tax based on the $7,500 cost of those shares to her husband.

From the $89,062.50 she bought $60,000 in United States Series "G" Bonds in the joint names of her husband and herself.

The decedent died December 25, 1954. The decedent's executors filed a timely estate tax return but did not include the G bonds. The Commissioner of Internal Revenue, claiming that the whole value of the G bonds should be included in the gross estate, assessed a deficiency on that basis. The executors paid the deficiency and interest, claimed a refund, and, after its disallowance, brought this action.

The obvious starting point is § 2040 of the Internal Revenue Code of 1954 which provides that "the value of the gross estate shall include the value of all property * * * to the extent of the interest therein held as joint tenants by the decedent and any other person * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person."

In interpreting the foregoing statutory provision, § 20.240–1 of the Treasury Regulations on Estate Taxes (1954 Code), in part, provide as follows:

"The entire value of jointly held property is included in a decedent's gross estate unless the executor submits facts sufficient to show that property was not acquired entirely with consideration furnished by the decedent, or was acquired by the decedent and the other joint owner or owners by gift, bequest, devise, or inheritance.

\* \* \* \* \* \*

"(c) *Examples.*—The application of this section may be explained in the following examples in each of which it is assumed that the other joint owner or owners survived the decedent:

\* \* \* \* \* \*

"(4) If the decedent, before the acquisition of the property by himself and the other joint owner, gave the latter a sum of money or other property which thereafter became the other joint owner's entire contribution to the purchase price, then the value of the entire property is so included, notwithstanding the fact that the other property may have appreciated in value due to market conditions between the time of the gift and the time of the acquisition of the jointly held property:

"(5) If the decedent, before the acquisition of the property by himself and the other joint owner, transferred to the latter for less than an adequate and full consideration in money or money's worth other income-producing property, the income from which belonged to and became the joint owner's entire contribution to the purchase price, then the value of the jointly held property less that portion attributable to the income which the other joint owner did furnish is included in the decedent's gross estate;"

■ Turning back to the text of § 2040 quoted above, we note that it has three parts, a broad inclusionary declaration, an exception thereto, and a proviso.

If it stood alone the broad inclusionary declaration would sweep within the decedent's estate the entire $60,000 in G bonds. The reason is that the decedent

as joint tenant had an interest in all those bonds.

The exception read literally has no application to this case. For the exception is so drafted as to carve out only cases where the joint property "originally belonged" to the joint tenant "other" than the decedent. That is, literally the exception reaches only those cases where the joint property once belonged to the other person. Verbally the exception fails to cover the case where the joint property owned was bought from a third person with money belonging entirely or partly to someone other than the decedent. However, despite the limited words of the exception, its intent and its reach include the case just mentioned.

And the proviso plainly reaches the case just mentioned. For the proviso covers a situation where the joint property was acquired for a "consideration" given by the "other person".

Thus the proviso clearly, and the exception less clearly, control the case at bar. For in the case at bar the joint property—that is the G bonds—were acquired for a consideration—that is, money—given by Mrs. Swartz, the widow.

So the question is whether that money was "acquired" by Mrs. Swartz from the decedent as a gift.

Of course, in one sense Mrs. Swartz did not acquire any of the $60,000 *directly* from her husband. From him she acquired certificates not money. But it would be stultifying to read the statute as though it reached property if and only if, when it became joint property, it bore precisely the form it bore when the decedent gave it to the other person. The policy of § 2040 requires us to interpret it as covering that portion of the new property which represents the value which the old property had when the decedent gave it away. Otherwise evasion of the section would be too easy. See Estate of Howard v. Commissioner, 9 T.C. 1192; Harvey v. United States, 7 Cir., 185 F.2d 463, 467. But the only reason for extending the letter of the statute is to preclude evasion. Extension of the letter of the statute should, therefore, be limited to the degree of risk of evasion.

Where, as in the case at bar, the gift property appreciates in value during the time it is held by the donee, the appreciation, as distinguished from the value at the time of the gift, never belonged to the donor. To regard the increase as though it had belonged to the donor is not a necessary fiction in order to preclude tax evasion. Indeed to treat the increase as though it belonged at some time to the donor would be inconsistent with other aspects of the tax law. For an appreciation occurring during the donee's ownership, and taken by him in the form of a realized gain, becomes taxable to the donee, not the donor. And indeed in the very case at bar, Mrs. Swartz recognized this principle. She paid a tax on capital gains attributable to the sale of the stock which yielded the $60,000 used to buy the G bonds.

My conclusion, therefore, is that there is includible in the decedent's gross estate only the value which 150 certificates had when the decedent gave them to Mrs. Swartz, or $10,004. This conclusion is in accord with the ruling in the only court case squarely in point, Harvey v. United States, supra. Perhaps it does not jibe perfectly with the fourth example set out in the Treasury Regulations. But it is to be noted that the fourth example does not deal with a situation where the gift property not merely appreciated in value, but was converted into other property and the conversion resulted in a realized profit taxable to the donee. Where the appreciation or increase in value is realized, the donee who contributes the realized profit is as surely contributing his own money as if he contributed dividends which he had received on the property while he was its sole owner. Since the fifth example set out in the Treasury Regulations admits that the donee's dividends are *his* contribution, it is difficult to see why the Government is unwilling to admit that the donee's profits (at least insofar as they represent appreciation after the

donee received the property) are also his contribution.  At any rate I see no distinction.

Judgment for plaintiff in accordance with the opinion.