The FIRST NATIONAL BANK OF KANSAS CITY, Executor of the Estate of Maxwell W. Cline, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 13862–1.

United States District Court
W. D. Missouri, W. D.

Dec. 11, 1963.

Terrell, Hess, Van Osdol & Magruder, Kansas City, Mo., for plaintiff.

F. Russell Millin, U. S. Dist. Atty., John L. Kapnistos, Asst. U. S. Dist. Atty., Kansas City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

This is an action for the recovery of estate taxes and interest in the amount of $77,873.17, plus interest. Pursuant to pre-trial order the parties have stipulated that on October 27, 1936, decedent gave to Mrs. Cline, his wife, 180 shares of the common stock of Dart Motor Company of Missouri (paragraph 8) [1]; that a gift tax return was duly filed in connection with that gift (paragraph 8); that on November 20, 1947, all of the issued and outstanding stock (630 shares) of Dart Truck (including, of course, the 180 shares given Mrs. Cline by her husband) was sold to New York interests (paragraph 9); that in 1937 and 1938 Mrs. Cline acquired 110 additional shares

---

1. This reference, and other like references, are to particular paragraphs of the stipulation filed pursuant to our pre-trial order.

at the cost of $250 per share; and in 1938 and 1939 she sold a total of 44 shares, so that from January 3, 1939, until the sale to the New York interests Mrs. Cline owned 246 shares (the 180 shares given her in 1936 plus the net 66 resulting from her purchases and sales during 1937 through 1939) (paragraph 11); and that Mrs. Cline also sold her net 246 shares to the New York interests, which, of course, included the 180 shares given her and the net 66 for which she traded.[2]

It is further stipulated that all of the money received by Mrs. Cline from the sale of her 246 shares of Dart Truck stock was deposited in two joint bank accounts of Mr. and Mrs. Cline (paragraph 14); that at all times, Mrs. Cline relied upon Mr. Cline to handle and invest all her funds, for her use and benefit (paragraph 15); that at no time did Mrs. Cline intend to make a gift of any part of her funds or property to Mr. Cline, and at no time did she assent that any part thereof should be sold or otherwise disposed of by him for his use and benefit (paragraph 16); and that the total of $498,899.18 received by Mrs. Cline from the sale of her 246 shares (paragraph 14) was used by Mr. Cline in acquiring $691,075.16 shares of jointly held assets that were on hand at the time of his death on October 18, 1957 (paragraph 17).

Pursuant to our pre-trial order, the parties have stipulated as follows concerning the preliminary legal issue to be determined in this Memorandum and Order:

"In this case the Court is met at the outset with a difference between the parties on the applicable law as respects the proceeds received by Mrs. Cline from the sale of the Dart Truck stock which had been given to her by the decedent in 1936. On the basis of the foregoing Stipu-

lation of Facts and Agreed Statement of Facts to be Proved, the Court is requested to rule on the following preliminary question of law:

"For the purposes of Section 2040 of the Internal Revenue Code of 1954, should the proceeds received by Mrs. Cline in 1947 from the sale of the Dart Truck stock given her by the decedent in 1936, which proceeds were used by Mr. Cline to acquire jointly-held assets, be considered as (a) money acquired without consideration by Mrs. Cline from Mr. Cline, or (b) Mrs. Cline's own separate funds?"

The taxpayer relies upon Swartz v. United States (D.C.Mass.1960), 182 F. Supp. 540, and Harvey v. United States (7 Cir. 1950), 185 F.2d 463, upon which Swartz relied.

The Government more or less concedes that Swartz is contrary to its position, and argues that "the Swartz interpretation is contrary to that placed on the statute by the Ninth Circuit in Tuck v. United States, 282 F.2d 405 (1960)".

The taxpayer sharpens the focus by arguing that "the Tuck case is * * * readily distinguishable from the Harvey and Swartz decisions, and the same court which decided Harvey has made the distinction, in a stock dividend case, English v. United States, (C.A. 7, 1959) 270 F.2d 876."

We agree with and shall rule the preliminary question for the taxpayer. We, of course, agree with the Government's general argument that unwarranted importance should not be placed on form rather than substance, but one does not establish that the gift to Mrs. Cline of the original 180 shares on October 27, 1936 was in fact a matter of form rather than a transaction of substance merely by suggesting that "Mr. Cline's

2. It is not completely clear from either the stipulation or the depositions whether the net 66 shares were purchased from cash dividends or whether the transaction that produced the funds with which the net 66 shares were purchased reflected some other sort of transaction designed to put additional shares in the hands of stockholders of record.

motive in making the gift originally was not the usual altruistic motive for giving, but, rather, was done solely for tax purposes."

The difference in result in cases cited by the parties reflects a difference in factual situations; not a distinction of legal principle or differences of interpretation of Section 2040 of the Internal Revenue Code of ·1954 or its predecessor statutes.

As we have indicated in footnote 2 above, the particular focus of our decision of the preliminary legal issue is limited to the 180 shares given Mrs. Cline by her husband on October 27, 1936. In regard to those shares, it is clear that they became her property to do with as she chose from that day on. When she sold those and the other 66 shares on November 20, 1947 she received $498,-899.18, again to do with as she wanted. She then elected to deposit *her* money, received from the sale of *her* 246 shares, in the two joint bank accounts maintained in her name and that of her husband. She did not have to do that; but she did, in fact, do exactly that. Our starting point on the facts therefore must commence at that point.

In Harvey, the deceased husband had, from time to time, made gifts of money and property to his wife. The only assets ever acquired or owned by the wife were those "given her by her husband, plus the profits and income produced by them". The court pointed out that the "jointly held property is not the gift property itself, in either its original or transmuted form, but property traceable to (1) the profits made through sales of the original gift property and successive reinvestments of the proceeds of such sales or (2) the rents, interests and dividends produced by such property in its original or converted form, while title thereto was in the wife."

The commissioner determined that the entire value of the jointly held property must be included in the husband's gross estate. The wife asserted the right to deduct $143,450 because of contributions made to the joint estate by her of money and property from the sources just stated. The case was ruled for the wife on the theory that there was no support for the Government's "novel proposition that income produced by gift property, after the gift has been completed, belongs to the donor and is property received or acquired from him by the donee". That court held that "income produced by property of any kind belongs to the person who owns the property at the time it produces such income and does not originate with a donor who has made a completed gift of that property prior to its production of the income". Of course, if the gift was not a completed one or if the gift was a sham and fraud, the principle stated would not be applicable; but 'no such suggestion is made by the Government in this case.

Both Ford v. Kavanaugh, (D.C.Mich. 1952) 108 F.Supp. 463, and Swartz v. United States, supra, applied the principles states in Harvey to the facts involved in those cases. In Ford, the Government attempted to include insurance policies in the gross estate because premiums had been paid out of income that came to the wife from stocks and bonds that had been given her three and seven years before the policy of life insurance was taken out. The court held in favor of the taxpayer, pointing out that the various securities were outright gifts to the wife. It was there determined that "the stocks had been originally given to [the wife] in years previous and did not contain any restrictions. It was her money to bargain with as she desired".

What that court added answers an argument made by the Goverment in this case when it stated that "[t]he fact that the husband supervised manipulation of the wife's finances, could draw checks on his wife's bank account and bought other stocks for her, does not change the picture".[3]

3. The Government argues here that "Mrs. Cline did nothing but hold the stock for eleven years and then turned the proceeds of the sale over to the deceased

In Swartz, the court expressly followed Harvey, holding that where "the gift property appreciates in value during the time it is held by the donee, the appreciation, as distinguished from the value at the time of the gift, never belonged to the donor". That court concluded, as we conclude in regard to the 180 shares, that the value of those shares at the time of the gift is controlling. The value of the 180 gift shares on October 27, 1936 are therefore includable in the decedent's gross estate. As we have indicated above, we need more facts concerning the 66 shares before ruling the question of whether those shares should or should not be includable under the theories of the cases we now discuss.

In Tuck v. United States (D.C.Cal. 1959), 172 F.Supp. 890, the District Court distinguished both Harvey and McGehee v. Commissioner of Internal Revenue, (5 Cir. 1958), 260 F.2d 818, on the facts. Tuck involved the question of whether particular stock dividends on shares of stock given the wife by her deceased husband were properly includable in the decedent's gross estate. The parties stipulated that the original shares were properly includable; the question ruled was therefore limited to the stock dividends alone. The District Court held they were.

Pending the appeal of Tuck to the Court of Appeals for the Ninth Circuit, the Seventh Circuit decided English v. United States (7 Cir. 1959), 270 F.2d 876. That was another stock dividend case. That case applied "[t]he test for exclusion of any item of property contributed to the joint tenancy". That test held to be "whether that property originally belonged to the survivor, and, if so, was not received or acquired from the decedent for less than full value in money or money's worth". The case was decided in favor of the Government under the facts there involved.

English distinguished Harvey on the facts, holding that the testimony and evidence submitted by the taxpayer in Harvey was sufficient to carry the burden of proof that rested upon her. It noted that such "serves to distinguish the instant case [English] on the facts" from Harvey, and ruled for the Government in English on the ground that "[t]he plaintiff [taxpayer] failed to meet the burden of proof". The stock dividends there involved were held on the facts not to "represent an increment to what plaintiff already owned but merely evidence thereof in a new form".[4] That court also held that there was nothing in the record of that case that would indicate McGehee had application to the facts there presented and invited a comparison with the opinion of the District Court in Tuck.

The Court of Appeals for the Ninth Circuit affirmed the District Court in Tuck on September 15, 1960; almost a year after English was decided. See Tuck v. United States, (9 Cir. 1960) 282 F.2d 405. English was cited with approval and the question we have stated in our footnotes was noted.

It is clear that the decision in Tuck did not rest upon any announcement of any new rule of decision to be applied to

to deposit in joint accounts, manage, invest and reinvest until it ended in the joint property at his death. It was his business acumen, not hers, that brought about the increase and appreciation into the form of the ultimate joint holdings." We, like the court in Ford, cannot see how this changes the picture. What difference would it have made had the wife entrusted those duties to an investment firm instead of her husband? We think none.

4. That holding in English and the rationale of McGehee pose the precise question noted in footnote 2 that we think needs further development on the facts as they relate to the 66 shares acquired and the manner by which they were acquired by Mrs. Cline from persons other than her husband. We have studied the depositions on this point but we are not satisfied that we fully understand the history of the 66 shares and the corporate transactions that occurred in the late 1930's concerning the stock ownership of Dart Truck.

the statute here involved. That decision rested upon its analysis of the nature of a stock dividend and upon an application of well established principles announced in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1919) and McDonald v. Maxwell, 274 U.S. 91, 47 S.Ct. 497, 71 L.Ed. 942 (1927). Tuck merely held that "[t]he added shares of stock are acquired solely as a result of possessing the ownership interest which was given to the survivor by the decedent; they add nothing to that interest but merely increase the number of stock certificates which represent it".

That court recognized that "[i]t is well settled that cash dividends paid out to the survivor during this period are his own original property for purposes of § 811 [present § 2040]".

■ We think it equally well settled that money realized from the sale of stock owned by reason of a valid gift of stock is the original property of the donee and that such money must be considered the separate funds of the donee.

■ For the reasons stated, the preliminary legal issue presented by the stipulation should be and is hereby answered by our determination that for the purposes of Section 2040 of the Internal Revenue Code of 1954, the proceeds received by Mrs. Cline in 1947 from the sale of the 180 shares of the Dart Truck stock given her by the decedent in 1936, which proceeds were used by Mr. Cline to acquire jointly-held assets, shall be considered as Mrs. Cline's own separate funds and shall not be includable in the decedent's gross estate.

By our reservation of any immediate decision concerning the 66 shares, we do not intimate that those shares should or should not receive any different treatment from that given the 180 shares. All that we have said concerning the 66 shares is merely to point out that we desire more detailed factual data concerning those shares before we make any definitive determination concerning them.

In order that an orderly procedure be established for the determination of that and other remaining questions, the parties are requested to confer, either personally or by correspondence, and to submit a draft of a second pre-trial order which will incorporate their joint thought concerning the ultimate disposition of this case.

Said draft will be submitted by January 8, 1964. Should counsel care to confer with the Court in connection with the matter of the second pre-trial order, we will endeavor to arrange a conference at a time convenient for everyone.

The Court expresses its appreciation for the excellent cooperation of counsel in their presentation of the preliminary issue of law ruled by this Memorandum and Order.