ESTATE OF MARCIA P. GOLDSBOROUGH, DECEASED, KATHERINE G. EPPLER, PERSONAL REPRESENTATIVE, AND KATHERINE G. EPPLER, ET AL.,[1] PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 10811–76, 10831–76,    Filed September 27, 1978.
10832–76, 10835–76,
10836–76, 10837–76.

---

[1] The following cases are consolidated herewith: Stuart G. Buppert II and Estate of Harriette G. O'Donoghue, Deceased, Stuart G. Buppert II, Personal Representative, Transferees, docket. No. 10831–76; Karen T. B. Richwine, docket. No. 10832–76; Barclay B. Buppert, docket. No. 10835–76; Hobart C. Buppert II, Transferee, docket. No. 10836–76; and Katherine Buppert Miller, docket. No. 10837–76.

*John C. Griffin* and *Walter R. Stone,* for the petitioners in docket No. 10811–76.

Stuart G. Buppert II, Karen T. B. Richwine, Barclay B. Buppert, Hobart C. Buppert II, and Katherine Buppert Miller, pro se.
*Wayne G. Chew,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $51,790.20 in the Federal estate taxes of the Estate of Marcia P. Goldsborough. In these consolidated cases, the issues for decision are as follows:

(1) To what extent, if any, are the values of certain stocks and securities jointly held by the decedent Marcia P. Goldsborough on the date of her death excludable from the gross estate under section 2040.[2]

(2) Whether transferee liability has been established for the Estate of Harriette G. O'Donoghue[3] pursuant to sections 6324(a)(2) and 6901(a) and (h) and, if so, whether transferee of a transferee liability has been established for the surviving children of Harriette G. O'Donoghue pursuant to those sections.

### FINDINGS OF FACT

Katherine G. Eppler (hereinafter Eppler), a personal representative of the Estate of Marcia P. Goldsborough (hereinafter

---

[2] All section references are to the Internal Revenue Code of 1954, as in effect on the date of decedent's death, unless otherwise noted.

[3] Katherine G. Eppler, as a petitioner in her individual capacity, concedes transferee liability.

Goldsborough or decedent), is a petitioner in docket No. 10811–76 and an individual transferee of certain jointly held assets of decedent. At the time the petition was filed, Eppler was a legal resident of Lutherville, Md. The Federal estate tax return for decedent's estate was filed by Eppler and Harriette G. O'Donoghue, daughters of the decedent, acting in their capacity as duly authorized representatives of the estate, with the Office of Internal Revenue at Philadelphia, Pa.

Petitioner in docket No. 10831–76 is Stuart G. Buppert II (hereinafter sometimes Buppert), a personal representative of the Estate of Harriette G. O'Donoghue (hereinafter O'Donoghue) and a son of O'Donoghue. At the time the petition was filed, Buppert was a legal resident of Severna Park, Md.

Petitioner in docket No. 10832–76 is Karen T. B. Richwine, a daughter of O'Donoghue. At the time the petition was filed, she was a legal resident of Annapolis, Md.

Petitioner in docket No. 10835–76 is Barclay B. Buppert, a son of O'Donoghue. At the time the petition was filed, he was a legal resident of Baltimore, Md.

Petitioner in docket No. 10836–76 is Hobart C. Buppert II, a son of O'Donoghue. At the time the petition was filed, he was a legal resident of Ruxton, Md.

Petitioner in docket No. 10837–76 is Katherine Buppert Miller, a daughter of O'Donoghue. At the time the petition was filed she was a legal resident of Baltimore, Md.

By deed dated May 12, 1937, and recorded among the Land Records of Baltimore City, Goldsborough acquired title in fee simple to real property and improvements known as 106 St. Dunstans Road, Baltimore, Md., (hereinafter St. Dunstans).

By deed dated April 4, 1946, and recorded among the Land Records of Baltimore City, Goldsborough, with her husband joining in the deed to provide a clear title free of any dower or curtesy rights, conveyed St. Dunstans to her two daughters, Eppler and O'Donoghue. The conveyance was without consideration and, on the date of the transfer to the two daughters, the value of St. Dunstans was $25,000. At the time of the conveyance Eppler and O'Donoghue were married, and they and their spouses lived apart from Goldsborough. Prior to and until sometime after the conveyance of April 4, 1946, Goldsborough resided at St. Dunstans.

By deed dated June 17, 1949, and recorded among the Land

Records of Baltimore City, O'Donoghue and Eppler, with their respective husbands joining in the deed, conveyed St. Dunstans to H. W. Ford and his wife for a purchase price of $32,500. Sometime in 1949, O'Donoghue and Eppler utilized their respective shares of the proceeds from the sale of St. Dunstans to purchase certain stocks and securities. Each of them placed the stocks and securities purchased in her own name and Goldsborough's name as joint tenants. These stocks and securities remained in joint tenancy from the date of purchase until the date of Goldsborough's death on December 21, 1972. Eppler's and O'Donoghue's father, then divorced from Goldsborough, handled the purchase of the stocks and securities.

From the time the stocks and securities in question were purchased through December 21, 1972, Goldsborough retained and used for her sole benefit all interest, dividends, and other income resulting from those stocks and securities. Income earned from the stocks and securities was included and reported on Federal income tax returns filed by Goldsborough.

The stocks and securities held in joint tenancy by Goldsborough and her two daughters appreciated from $32,500, their value on the date of purchase, to $160,383.19, their value on the alternate valuation date after Goldsborough's death on December 21, 1972. No part of the increase in value was caused by additional purchases, contributions, or dividends attributable to the surviving joint tenants.

Upon Goldsborough's death, Eppler and O'Donoghue, as surviving cotenants, each received her respective share of the stocks and securities in question, as well as her respective share of other securities held jointly by Goldsborough and her two daughters.

On or about September 21, 1973, Eppler and O'Donoghue, in their capacity as personal representatives of Goldsborough's estate, filed the Federal estate tax return in which the value of the stocks and securities in question was not included in the gross estate. In his statutory notice of deficiency, respondent disallowed the exclusion of the value of these stocks and securities.

O'Donoghue died on October 13, 1974, then survived by her second husband and five children from her previous marriage. On or about July 13, 1974, and within 3 years of O'Donoghue's death, each of her five surviving children, petitioners herein,

received various items of property from O'Donoghue including, but not limited to, 40 shares of Gillette Co., 32 shares of Standard Oil of California, and $5,116.16 in cash.

The Gillette Co. stock and the Standard Oil of California stock, referred to above, had been previously owned jointly by O'Donoghue and Goldsborough prior to Goldsborough's death. The value of each share of Gillette Co. stock and Standard Oil of California stock at the alternate valuation date of Goldsborough's estate was $54.06 and $73.38, respectively. The value of each share of Gillette Co. stock and Standard Oil of California stock on July 13, 1974, the date of transfer to the five surviving children, was $29 and $52.50, respectively.

Frederick J. O'Donoghue, the surviving spouse of O'Donoghue, became the successor in interest to various real properties held in tenancy by the entireties located in Maryland and Florida. A portion of the properties transferred to O'Donoghue from Goldsborough's estate had been utilized to secure and purchase the Maryland and Florida properties.

## OPINION

Section 2040[4] provides in general that the decedent's gross estate includes the entire value of jointly held property but that section "except[s] such part thereof as may be shown to have originally belonged to * * * [the surviving joint tenant(s)] and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth." Section 2040 further provides that if the decedent owned property jointly with another, the amount to be excluded from the decedent's gross estate is "only such part of the value of such property as is proportionate to the consideration furnished by * * * [the surviving joint tenant(s)]." Mathematically this "consideration furnished" exclusion can be expressed as follows:

---

[4]SEC. 2040. JOINT INTERESTS.

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided*, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person * * * .

$$\text{Amount excluded} = \frac{\text{Entire value of property (on the date of death or alternate valuation date)}}{} \times \frac{\text{Survivor's consideration}}{\text{Entire consideration paid}}$$

In the instant case, the decedent (Goldsborough) acquired on May 12, 1937, real property (St. Dunstans) in her individual name. On April 4, 1946, decedent transferred St. Dunstans, valued at $25,000 on that date, to her two daughters (Eppler and O'Donoghue) as a gift. On July 17, 1949, the daughters sold St. Dunstans to H. W. Ford and his wife for $32,500. Sometime in that same year, each daughter invested her share of the proceeds from the sale of St. Dunstans in various stocks and securities; each daughter took title to her respective stocks and securities in joint tenancy with decedent. These stocks and securities remained in joint tenancy until December 21, 1972, the date of decedent's death, and during the period of joint tenancy the stocks and securities appreciated in value to $160,383.19, the value on the alternate valuation date.

Thus, the section 2040 exclusion depends on the amount, if any, of the consideration Eppler and O'Donoghue, the surviving joint tenants, furnished toward the $32,500 purchase price of the jointly held stocks and securities.

Respondent contends that all the funds used to purchase the stocks and securities in question were derived from decedent and thus the entire value of the jointly held property ($160,383.19) is includable in her gross estate.

Petitioners Buppert and Eppler argue that only the value of St. Dunstans at the time the gift was made to decedent's two daughters (i.e., $25,000) is includable in decedent's gross estate. In the alternative, petitioner Eppler contends that the gain of $7,500, measured by the appreciation in value from the time St. Dunstans was given to the two daughters in 1946 until that property was sold by them in 1949, constitutes consideration furnished by the daughters toward the $32,500 purchase price of the jointly held stocks and securities. Thus Eppler argues that $37,011.50 ($7,500/$32,500 of $160,383.19), the value of the jointly held property on the alternate valuation date, should be excluded from decedent's gross estate. We agree with this alternative argument.

To be sure, section 2040 is not a paragon of clarity, and the courts and Internal Revenue Service have wrestled with the question of whether a contribution made out of gain represent-

ing appreciation in value of property received gratuitously from decedent is attributable to the decedent or, instead, is to be treated as income from the property and thus separate funds of the surviving tenant.[5] the law, as we perceive it, recognizes two distinct situations and treats the two differently. In one situation, the surviving joint tenant receives property gratuitously from the decedent; the property thereafter appreciates, and the property itself is contributed in an exchange for jointly held property. In this circumstance section 20.2040–1(c)(4),[6] Estate Tax Regs., treats all the property as having been paid for by the decedent, and the entire value of the property is included in the decedent's gross estate. See *Estate of Kelley v. Commissioner*, 22 B.T.A. 421, 425 (1931).

In the second situation, the surviving joint tenant receives property gratuitously from the decedent; the property thereafter appreciates or produces income and is sold, and the income or the sales proceeds are used as consideration for the acquisition of the jointly held property. In this situation, the income or the gain, measured by the appreciation from the time of receipt of the gift to the time of sale, has been held to be the surviving joint tenant's income and a part of that joint tenant's contribution to the purchase price. *Harvey v. United States*, 185 F.2d 463, 467 (7th Cir. 1950); *First National Bank of Kansas City v. United States*, 223 F. Supp. 963, 967 (W.D. Mo. 1963); *Swartz v. United States*, 182 F. Supp. 540, 542 (D. Mass. 1960). Thus, in the words of the statute, "such part of the value of such property as is proportionate to the consideration furnished by [the surviving joint tenant]" is excluded. See also *Estate of Kelley v. Commissioner, supra;* cf. *Dimock v. Corwin*, 99 F.2d 799 (2d Cir. 1938), affd. sub nom *United States v. Jacobs*, 306 U.S. 363 (1939); *Stuart v. Hassett*, 41 F. Supp. 905 (D. Mass. 1941).

The facts of the instant case fall precisely within this second

---

[5]It is clear that income from property acquired gratuitously from the decedent constitutes a contribution from a surviving joint tenant's separate funds. Sec. 20.2040–1(c)(5), Estate Tax Regs.

[6]Sec. 20.2040–1(c)(4), Estate Tax Regs., provides as follows:

If the decedent, before the acquisition of the property by himself and the other joint owner, gave the latter a sum of money or other property which thereafter became the other joint owner's entire contribution to the purchase price, then the value of the entire property is so included, notwithstanding the fact that the other property may have appreciated in value due to market conditions between the time of the gift and the time of the acquisition of the jointly held property;

situation. In *Harvey v. United States, supra* at 465, the court characterized the facts and framed the issue as follows:

The jointly held property is not the gift property itself, in either its original or transmuted form, but property traceable to (1) the profits made through sales of the original gift property and successive reinvestments of the proceeds of such sales or (2) the rents, interest and dividends produced by such property in its original or converted form, while title thereto was in the wife. The question presented by this appeal, then, is whether such profits and income, realized from property originally received by the wife as a gift from her husband and traceable into property which was held by them as joint tenants at the time of the husband's death, came within the exception to the requirement of Section 811(e) [predecessor to sec. 2040] that the entire value of property held in joint tenancy shall be included in the decedent's gross estate.

The Government in *Harvey* argued that the full value of the jointly held property should be included in the decedent's gross estate, and the court dealt with that argument in the following manner (185 F.2d at 467):

It seems clear that none of the cases cited contains any support for the novel proposition that income produced by gift property, after the gift has been completed, belongs to the donor and is property received or acquired from him by the donee; nor is there, in these cases, anything to impeach the conclusion of the trial court, or that of the Tax Court in the *Howard* case,[7] that the income produced by property of any kind belongs to the person who owns the property at the time it produces such income and does not originate with a donor who has made a completed gift of that property prior to its production of the income. * * *

* * * Moreover, no reason is suggested for holding that one form of income, i.e., "profit gained through a sale or conversion of capital assets," * * * is outside the exception, whereas other forms of income, such as dividends, rentals and interest, fall within its terms. It follows that the government's contention that the full value of the property held in joint tenancy by decedent and his wife at the time of his death should have been included in decedent's gross estate must be rejected. [Citations omitted.]

Thus we conclude that Eppler and O'Donoghue furnished $7,500 toward the $32,500 purchase price paid for the stocks and securities they held in joint tenancy with decedent until her death on December 21, 1972. Under the terms of the statute, such part of the value of the property, i.e., $160,383.19 on the alternate valuation date, as is proportionate to the $7,500 of

---

[7] *Estate of Howard v. Commissioner,* 9 T.C. 1192, 1202–1203 (1947).

consideration Eppler and O'Donoghue furnished is excluded from decedent's gross estate.[8] Under the mathematical formula, set out above, the amount of the exclusion is $37,011.50.

On two occasions during the trial of the instant case, respondent made a motion to amend his pleadings in order to be able to advance the additional argument that the jointly held property at issue herein is includable under section 2036 because the decedent retained certain rights of posession and enjoyment over St. Dunstans after it was deeded to Eppler and O'Donoghue on April 4, 1946. However, petitioners, some of whom were appearing pro se, had theretofore been led to believe that section 2040 was the only section relied on by respondent for inclusion of the jointly held property in decedent's gross estate and had no opportunity to adequately prepare for such an argument under section 2036.[9] Because the amendment was sought without warning by respondent at such a late date in these proceedings and was prejudicial to petitioners' case, the motion was denied. See *Schuster's Express, Inc. v. Commissioner,* 66 T.C. 588, 593 (1976), affd. 562 F.2d 39 (2d Cir. 1977).

On brief respondent renewed his efforts to raise the issue that the original transfer of St. Dunstans by decedent to her two daughters was tainted. In his brief respondent argues that the transfer was not a completed gift and, therefore, the *Harvey, Swartz,* and *First National Bank of Kansas City* cases, referred to above, are distinguishable. In effect respondent seeks to advance virtually the same argument which we disallowed at the trial of the instant case, and we think that petitioners are no

---

[8]Petitioners Buppert's and Eppler's original contention that only $25,000 (the value of St. Dunstans at the time of the gift) is includable is without merit, and their reliance on *Swartz v. United States,* 182 F. Supp. 540 (D. Mass. 1960), and *First National Bank of Kansas City v. United States,* 223 F. Supp. 963 (W.D. Mo. 1963), is, in this respect, misplaced. In *Swartz,* there was no appreciation in value after transfer to joint ownership, i.e., the initial cost of the jointly held property was $60,000 and remained so until the death of one of the joint tenants. Further, although certain language in *First National Bank of Kansas City* may indeed be read to support these petitioners' initial claim, we think that a closer reading of the case indicates that the court focused only on the preliminary legal question there involved (i.e., whether the proceeds received by Mrs. Cline in 1947 from the sale of stock given her by the decedent in 1936, which proceeds were used to acquire jointly held assets, should be considered as Mrs. Cline's own separate funds) and, due to the lack of certain relevant facts, did not precisely apply the consideration-furnished test of sec. 2040. See *First National Bank of Kansas City, supra* at 964, 967.

[9]The notices of deficiency state:

"It is determined that the jointly owned securities described as items 1 to 11 inclusive of Schedule E of the return are includible in the gross estate under section 2040 of the Internal Revenue Code. Accordingly, the reported value of the taxable estate is increased $160,383.19."

less disadvantaged now by respondent's failure to plead his "incompleted gift" theory than they were then.[10] "The taxpayer works at an extreme disadvantage in trying to invalidate deficiency assessments if he does not specifically know why the Commissioner is challenging the taxpayer." See *Commissioner v. Transport Mfg. & Equip. Co.*, 478 F.2d 731, 735 (8th Cir. 1973), affg. *Riss v. Commissioner*, 56 T.C. 388 (1971) and 57 T.C. 469 (1971). In the interest of justice and fair play, we conclude that respondent cannot rely on this new theory raised in post-trial briefs.

Finally, we think that the facts clearly indicate that transferee liability has been established for O'Donoghue's estate pursuant to section 6324(a)(2)[11] and section 6901(a)(1)(A) and (h)[12] and that transferee of transferee liability has been established under those sections for her five surviving children— Stuart G. Buppert II, Karen T. B. Richwine, Barclay B. Buppert, Hobart C. Buppert II, and Katherine Buppert Miller—all petitioners herein. As transferees and transferees of a transfer-

---

[10] In his answer and by stipulation, respondent effectively admitted a transfer of title of St. Dunstans to the two daughters on Apr. 4, 1946, a fact that he cannot now deny. Also, viewing the facts in the instant case, we are convinced that, under Maryland law, the conveyance on that date was a completed gift. Md. Ann. Code art. 21, sec. 1 (1939); see *Nickel v. Brown*, 75 Md. 172, 186 (1892). The evidence on which respondent relies is testimony from a witness who evidently had not been interviewed or otherwise given an opportunity to refresh her recollection about events which occurred over 30 years before the trial. Statements such as "I really don't know," "I'm not aware," and "I just simply don't recall" pervade the transcript of her testimony. In holding that respondent may not raise the incompleted gift theory, a factual issue, we do not intend to depart from the rule that, in an appropriate case, a deficiency may be approved on the basis of reasons other than those relied upon by the Commissioner. See *Wilkes-Barre Carriage Co. v. Commissioner*, 39 T.C. 839, 845 (1963), affd. 332 F.2d 421 (2d Cir. 1964).

[11] Sec. 6324(a)(2) provides in pertinent part as follows:

(2) LIABILITY OF TRANSFEREES AND OTHERS.—If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee (except the trustee of an employees' trust which meets the requirements of section 401(a)), surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. * * *

[12] Sec. 6901(a)(1)(A) and (h) provides as follows:

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) INCOME, ESTATE, AND GIFT TAXES.—

(A) TRANSFEREES.—The liability, at law or in equity, of a transferee of property—

(i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

(ii) of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes), or

(iii) of a donor in the case of a tax imposed by chapter 12 (relating to gift taxes),

ee, the liability of each of these petitioners for tax due from the decedent's estate is limited to the value of the transferred property when received by that transferee in his own right. *Drake v. Commissioner*, 30 B.T.A. 475, 478 (1934) (transferee liability); *O'Brien v. Commissioner*, 20 B.T.A. 167, 168–169 (1930) (transferee liability); *Atlas Plywood Co. v. Commissioner*, 17 B.T.A. 156, 160 (1929) (transferee of transferee liability).

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

\*      \*      \*      \*      \*      \*      \*

(h) DEFINITION OF TRANSFEREE.—As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under section 6324(a)(2), is personally liable for any part of such tax.