RICHARD H. BLACK, DECEASED, PHYLLIS M. BLACK, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Black v. Commissioner
Docket No. 9967-80.
United States Tax Court
T.C. Memo 1984-136; 1984 Tax Ct. Memo LEXIS 535; 47 T.C.M. (CCH) 1318; T.C.M. (RIA) 84136; March 20, 1984. Stephen S. Case, for the petitioner. William A. Clarke and Dennis C. DeBerry, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge:* Respondent determined a Federal estate tax deficiency of $41,366.17. The issue for decision is whether more than one-half of the value of securities held in a revocable trust established by decedent and his wife, securities *537 that had previously been owned by them as joint tenants with right of survivorship, is includable in decedent's gross estate under either section 2040[1] or section 2038. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto incorporated herein by this reference. Decedent Richard H. Black died August 2, 1977. Petitioner Phyllis M. Black is decedent's surviving spouse and is the personal representative of his estate. Petitioner resided in Sun City, Arizona, at the time she filed the petition in this case. Petitioner timely filed a Federal estate tax return (Form 706) for decedent's estate with the Internal Revenue Service Center at Ogden, Utah. Decedent ("Mr. Black") and petitioner *538 ("Mrs. Black") were married on June 24, 1939. When they got married, they had virtually no savings or assets of any kind. Before her marriage, Mrs. Black had been employed by the Chicago Northwest Railroad, and she continued to work for the failroad until March of 1941. During World War II, from December of 1942 until July of 1945, Mrs. Black worked at a bomber plant. Except for these two periods, Mrs. Black was not employed outside of the home during her marriage. Mr. Black worked for the K-Mart/S.S. Kresge Corporation ("Kresge") from 1939 until his retirement in 1973, except for a period of time during the war when he served as a civilian teacher for the Navy. Mr. Black had a successful career with Kresge, becoming Treasurer and Vice-President before his retirement in 1973. During the war, Mr. Black purchased war bonds with Mrs. Black's earnings, while his earnings were used to pay household expenses. After the war, the Blacks purchased their first home for approximately $8,500, using the war bonds purchased from Mrs. Black's earnings as a down payment. The Blacks sold this home in 1952 and used the proceeds to purchase a second home. All of the mortgage loan payments *539 on both homes were made from Mr. Black's earnings. They sold the second home in 1976 for approximately $81,000 and used the proceeds for investments, having already purchased a third home for their retirement in Sun City, Arizona. Sometime in 1962 or 1963, Mrs. Black received an inheritance of about $3,000 from an aunt. Sometime in 1965 or 1966, Mrs. Black received an inheritance of about $10,000 from her father. Except for $500, Mrs. Black turned these inheritance over to Mr. Black for him to invest. In 1975, Mrs. Black also received a small inheritance of an undetermined amount from a sister. As of June 10, 1977, the Blacks owned the following securities as joint tenants: $100,000.00 Ford Motor Credit Debenture, 8 1/2 percent, due March 15, 1991 $100,000.00 Singer Company Debenture, 8 percent due January 15, 1999 $50,000.00 Ford Motor Credit Debenture, 7.85 percent due January 15, 1994 $50,000.00 Public Service Electric & Gas Bond, 8.45 percent, due September 1, 2006 $30,000.00 Ford Motor Credit Note, 8 1/4 percent, due November 1, 1988 $25,000.00 BankAmerica Debenture, 8 3/4 percent, due May 1, 2001 2,200 Shares of K-Mart/S.S. Kresge Corporation Common Stock
*540 On June 10, 1977, Mr. and Mrs. Black created the Black Revocable Trust. The Blacks served as trustees (referred to in the trust instrument in the singular as "trustee"). The trust agreement identified the trust corpus as follows: Trustors transfer to Trustee all property listed in Schedule A, Husband's Separate Property and Schedule B, Wife's Separate Property, attached to this agreement…. During their joint lives, the Blacks retained unrestricted rights to all trust income and principal. During their joint lives, Mr. Black had a power to direct the investment of the trust assets.Upon Mr. Black's death or incapacity, Mrs. Black had a power to approve or reject the trustee's investment recommendations. The trestee was relieved of liability if the Blacks exercised or failed to exercise these powers. Upon the death of the first trustor to die, the trust agreement called for a division of the trust estate into two separate trusts--the "Survivor's Trust" and the "Decedent's Trust." To the Survivor's Trust were to be allocated the "Surviving Trustor's Separate property and Surviving Trustor's interest in community property…" and in addition an amount for the maximum marital *541 deduction. [2] The remainder of the trust assets were to be allocated to the Decedent's trust. With respect to the Survivor's Trust, the Surviving Trustor had an unrestricted right to all income and principal and a general testamentary power of appointment. [3]
With respect to the Decedent's *542 Trust, the Surviving Trustor and the Blacks' daughter, Dorothy Gayle Standish, were beneficiaries entitled to discretionary income and principal distributions. Although the Surviving Trustor was trustee, the Surviving Trustor was not to "participate in any decision to invade principal for his or her benefit;" the decision to invade principal on behalf of the Surviving Trustor was vested in a co-trustee or successor trustee other than the Surviving Trustor.The Surviving Trustor had a special power of oppointment with respect to the remaining corpus and accumulated income of the Decedent's Trust. In default of the Surviving Trustor's exercise of the special power of appointment, the remainder of the Decedent's Trust was distributable 75 percent outright to their daughter, Dorothy Gayle Standish, if she survived the Blacks, and the remaining 25 percent (or all of the estate if the daughter did not survive the Blacks) was to be held in further trust for the benefit of the Blacks' grandchildren living at the time of the Surviving Trustor's death.
With respect to the trustees' discretionary powers over principal and income, the trust agreement provided as follows: Trustee is directed *543 to regard the income beneficiary or beneficiaries at any given time as having primary rights under this agreement and Trustee is directed to consider only the welfare of income beneficiaries in the exercise of discretionary powers and disregard the interests of any successor beneficiaries. Any discretionary right to use principal shall include the right to exhaust principal for such purpose.No beneficiary shall have any right to compel Trustee to make any discretionary payment or expenditure or question the propriety of any discretionary payment or expenditure made by Trustee. Any discretionary determination made by Trustee shall be final as to all beneficiaries. The Blacks retained a power of revocation worded as follows: Trustors may revoke this trust agreement in whole or in part and amend this trust agreement from time to time by written instrument signed and delivered to Trustee during the lifetime of both Trustors…. From an after the death of one Trustor, the power to alter, amend and revoke shall be exercisable by the Surviving Trustor, but only with respect to the property held in [the Survivor's Trust]. Finally, the agreement provided: Property transferred to *544 this trust shall retain its character as community property of both Trustors or separate property of either Trustor and upon withdrawal from the trust or upon revocation of this trust, during the lifetime of both Trustors, property shall be reconveyed to Trustors, or either of them, in the form existing prior to the establishment of this trust. On June 14, 1977, the Blacks executed documents which provided as follows: THE BLACK REVOCABLE TRUST Schedule "A" - Husband's Separate Property A. STOCKS: 1,100 Shares of the Common Stock of K MART B. CORPORATE BONDS: 1. $13,000
BANKAMERICA CORPORATION
8-3/4% Debenture, due May 1, 2001
2. $15,000
FORD MOTOR CREDIT COMPANY
8-1/4% Suordinated (sic) Note, due November 1, 1988
3. $50,000
FORD MOTOR CREDIT COMPANY
8-1/2% Subordinated Debenture, due March 15, 1991
4. $25,000
FORD MOTOR COMPANY
7.85% Sinking Fund Debenture, due January 15, 1994
5. $25,000
PUBLIC SERVICE ELECTRIC AND GAS COMPANY
First and Refunding Mortgage Bond
8.45% Series G, due September 1, 2006
6. $50,000
THE SINGER COMPANY
8% Sinking Fund Debenture, due January 15, 1999
RECEIPT of the above described assets *545 of RICHARD H. BLACK is hereby acknowledged this 14th day of June, 1977. /s/ RICHARD H. BLACK, as Trustor and Trustee /s/ PHYLLIS M. BLACK, as Trustor and Trustee THE BLACK REVOCABLE TRUST Schedule "B" - Wife's Separate Property A. STOCKS: 1,100 Shares of the Common Stock of K MART B. CORPORATE BONDS: 1. $12,000
BANKAMERICA CORPORATION
8-3/4% Debenture, due May 1, 2001
2. $15,000
FORD MOTOR CREDIT COMPANY
8-1/4% Subordinated Note, due Nobember (sic) 1, 1988
3. $50,000
FORD MOTOR CREDIT COMPANY
8-1/2% Subordinated Debenture, due March 15, 1991
4. $25,000
FORD MOTOR COMPANY
7.85% Sinking Fund Debenture, due January 15, 1994
5. $25,000
PUBLIC SERVICE ELECTRIC AND GAS COMPANY
First and Refunding Mortgage Bond
8.45% Series G, due September 1, 2006
6. $50,000
THE SINGER COMPANY
8% Sinking Fund Debenture, due January 15, 1999
RECEIPT of the above described assets of PHYLLIS M. BLACK is hereby acknowledged this 14th day of June, 1977. /s/ RICHARD H. BLACK, as Trustor and Trustee /s/ PHYLLIS M. BLACK, as Trustor and Trustee On the same day, the Blacks took their jointly owned securities to the First National Bank *546 ("the Bank"). The Bank executed receipts for the delivery of the securities, and had the securities reissued. Those securities listed on "Schedule 'A' - Husband's Separate Property" were reissued to the Blacks as trustees under a trust agreement dated June 10, 1977, for the benefit of Richard H. Black. Those securities listed on "Schedule 'B' - Wife's Separate Property" were reissued to the Blacks as trustees under a trust agreement dated June 10, 1977, for the benefit of Phyllis M. Black. At the date of decedent's death, August 2, 1977, the trust contained, without any additions or subtractions, the same securities listed in "Schedule 'A' - Husband's Separate Property" and "Schedule 'B' - Wife's Separate Property" executed on June 14, 1977. On January 23, 1979, a delinquent gift tax return for the fourth quarter of 1973 was filed for Mr. Black, reporting a taxable gift to Mrs. Black of a one-half interest in the following securities: 100M Singer Company 8% Sinking Fund Deb. due Jan. 15, 1999 50M Ford Motor Co. 7.85% Sinking Fund Deb. due Jan. 15, 1994 Also on January 23, 1979, a delinquent gift tax return for the third quarter of 1976 was filed for Mr. Black, reporting *547 a taxable gift to Mrs. Black of a one-half interest in the proceeds from the sale of their Michigan residence. On the estate tax return filed for decedent, petitioner reported on "Schedule G - Transfers During Decedent's Life," only the assets listed on "Schedule 'A' - Husband's Separate Property" of the Black Revocable Trust. Petitioner did not report any of the assets of the Black Revocable Trust on Form 706 "Schedule E - Jointly Owned Property." In his notice of deficiency, respondent determined that all of the assets in the Black Revocable Trust "were held as joint tenants by decedent and his spouse as of decedent's date of death…" and that "[a]ll of the contributions for these items, except $10,000, were furnished by the decedent." Respondent increased the gross estate by $198,409, allowed a deduction for unclaimed gift tax, and also increased the amount of the allowable marital deduction as a result of increasing the amount of the assets of the Black Revocable Trust includable in decedent's gross estate. OPINION Petitioner reported in decedent's gross estate the value of only one-half of the Black Revocable Trust, representing the value of the assets listed on "Schedule *548 'A' - Husband's Separate Property." The issue for our decision is whether any more of the Black Revocable Trust is includable in decedent's gross estate. Respondent's primary argument is that the entire value of the trust is includable under section 2040. [4] Under that section all jointly held property is includable in the estate of the first of the joint tenants to die, except to the extent that the survivor can prove contribution. Respondent's position is that the Blacks transferred jointly held property to a revocable trust retaining joint and survivor life interests therein. Citing Estate of Hornor v. Commissioner,44 B.T.A. 1136 (1941), affd. 130 F. 2d 649 (3d Cir. 1942); Estate of Derby v. Commissioner,20 T.C. 164 (1953); and Estate of May v. Commissioner,T.C. Memo. 1978-20, respondent argues that the Blacks' transfer of their jointly held securities to the Black Revocable Trust was ineffective for Federal estate tax purposes to sever the joint tenancy.[5] We agree. *549 Petitioner argues that this case is factually distinguishable from Hornor,Derby, and May. Petitioner views the creation of the Black Revocable Trust as involving two separate and distinct acts--first, a severance of the joint tenancy assets into property held by the spouses separately and individually, and second, a contribution of those individually owned assets to the Black Revocable Trust. Petitioner also argues that the Blacks' interests in the trust thereafter continued to be a divided ownership, and that upon revocation, the assets would have been returned to the spouses separately and individually, not in a joint ownership form. Petitioner's purported factual distinctions are not borne out by the record. We do not attach to the separate scheduling of the joint securities the significance that petitioner does. While the trust agreement refers to separate schedules of assets, identified as the respective separate property of the husband and the wife, Schedules A and B were not executed until four days after the trust was created. Moreover, the jointly held securities were not surrendered and reissued for the separate benefit of each spouse until four days *550 after the trust was created. Realistically, we cannot view these separate acts as anything but interdependent steps in a single integrated transaction. The Blacks transferred their joint tenancy property into a revocable trust, and that does not suffice to sever the joint tenancy under the Hornor,Derby, and May line of cases. Likewise, we accept neither the premise nor the importance of petitioner's characterization of the Blacks' interest in the trust as "separate." During their joint lives, all trust income and principal rights were subject to the Blacks' unfettered discretion. Assuming the Blacks as trustees may have been required to segregate the Schedule A and B assets, [6] the division of the Black Revocable Trust into two trusts at the death of the first spouse was really only an estate planning device. The goal was to minimize estate taxes at the first death by providing a marital deduction gift adequate to reduce to a minimum the taxes due at the death of the first spouse, and to shelter the balance of the first spouse's assets from taxation at the death of the second spouse. See Price, Contemporary Estate Planning, secs. 5.30-5.48 (1982). After the death *551 of the first spouse, the bulk of the assets were allocated to the Survivor's Trust, over which petitioner possessed the same unfettered dominion that the Blacks possessed over the entire trust during their joint lives. We also believe that had the Blacks exercised their power of revocation, the trust securities would have been reconveyed to them as joint tenants with right of survivorship. The pertinent clause of the trust agreement provided as follows: Property transferred to this trust shall retain its character *552 as community property of both Trustors or separate property of either Trustor and upon withdrawal from the trust or upon revocation of this trust, during the lifetime of both Trustors, property shall be reconveyed to Trustors, or either of them, in the form existing prior to the establishment of this trust. [Emphasis supplied.] Prior to the establishment of the trust, the Blacks held their securities as joint tenants with right of survivorship. As discussed above, the securities were not segregated until after the creation of the revocable trust. We are unpersuaded by petitioner's construction of this paragraph, emphasizing the use of the plural form (both Trustors) when discussing community property juxtaposed against the singular form (either Trustor) when discussing separate property. Under Arizona law, a joint tenancy with right of survivorship between a husband and wife is a separate property estate, not community property. Becchelli v. Becchelli,109 Ariz. 229, 508 P. 2d 59, 64 (1973); Collier v. Collier,73 Ariz. 405, 242 P. 2d 537, 541 (1952). *553 See also DeFuniak & Vaughn, Principles of Community Property, sec. 134, pp. 330-333 (2d ed. 1971). Their respective joint tenancy interests in the securities were "the separate property of either Trustor." We believe that the above quoted trust provision is concerned only with the characterization of the property as community or separate, and not with the nature of the ownership as joint or individual. [7]
We conclude that this case is factually indistinguishable from the Hornor,Derby, and May cases. We reject petitioner's alternative postion that we should overrule Hornor,Derby, and May. The cases upon which petitioner relies for the argument that the Blacks' joint tenancy was severed for Federal estate tax purposes, and which *554 she contends are inconsistent with Hornor,Derby, and May, are plainly distinguishable because they involved irrevocable transfers. [8] The Blacks' transfer of their jointly held securities to a revocable trust in which, during their joint lives, they retained unrestricted dominion over principal and income was ineffective, for Federal estate tax purposes, to sever their joint tenancy. We will continue to follow the long-settled rule of the Hornor,Derby, and May cases. Accordingly, we hold that the assets of the Black Revocable Trust are includable in decedent's gross estate under section 2040. Therefore, we need not address respondent's alternative argument under section 2038. Section 2040 includes in a decedent's gross estate the entire value of jointly held property, except to the extent that the surviving joint tenant *555 can prove contributions. Sec. 2040(a). In essence, section 2040 raises a rebuttable statutory presumption that the decedent furnished the entire consideration for the jointly held property. See Foster v. Commissioner,90 F. 2d 486, 488 (9th Cir. 1937); Stephens, Maxfield & Lind, Federal Estate and Gift Taxation, par. 4.12[8] (1978). [9] Here, respondent allowed $10,000 as the contribution of the surviving spouse, presumably reflecting Mrs. Black's inheritance from her father in 1965 or 1966. However, we have found as a fact that she received other inheritances that she turned over to Mr. Black for him to invest. We have also found that some of the investments in the Black Revocable Trust were traceable to the war bonds purchased with Mrs. Black's earnings during World War II. Although these findings were based on petitioner's testimony, we found her believable, and respondent has not in any way impeached her credibility. Petitioner's occasional lack of specificity is understandable given the considerable passage of time since these events. *556 Respondent did not reduce the value of the assets includable in decedent's gross estate to reflect these additional contributions by Mrs. Black. Nor did respondent allow as a contribution by Mrs. Black any appreciation in the value of the Blacks' homes attributable to her down payment on their first home. See section 20.2040-1(a)(2), Estate Tax Regs. [10] Cf. Estate of Goldsborough v. Commissioner,70 T.C. 1077 (1978), affd. without published opinion 673 F. 2d 1307, 1310 (4th Cir. 1982). Although the record does not show the exact amounts of some of these inheritances nor of Mrs. Black's contribution to the Blacks' first home, we are convinced that the value of her contributions to the Black Revocable Trust as of the time of her husband's death exceeded the $10,000 allowed by respondent. Accordingly, using our best judgment, and resolving all doubts against petitioner, cf. Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930), we conclude that she has contributed $10,000 more than respondent has allowed (for a total of $20,000), which must be excluded from the value of the trust assets included in decedent's gross estate under section *557 2040. See Stephens, Maxfield & Lind, supra, at par. 4.12[8], p. 4-246. [11]
*558 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
*. This case was tried before Judge Sheldon V. Ekman, who died January 18, 1982. By order of the Chief Judge, the case was assigned to Judge Edna G. Parker↩ for disposition. 1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, and all references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. The marital deduction formula gift was described as: … an amount equal to the maximum marital deduction allowable to the estate for Federal estate tax purposes, diminished by (a) the value for Federal estate tax purposes of all items of property and interests in property included in the gross estate for Federal estate tax purposes, which qualify for the marital deduction, and which pass or have passed to the Surviving Trustor under other provisions of this Trust or outside of this Trust by any other meams, and (b) the difference, if any, between the amount determined above, including any adjustments under clause (a), and the exact amount necessary to eliminate payment of Federal estate taxes by the estate.↩
3. In default of the Surviving Trustor's exercise of the general power of appointment, the remaining principal and undistributed income were to be added to the Decedent's Trust.↩
4. As in effect at the time of decedent's death, Section 2040 provided in pertinent part: (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as it proportionate to the consideration furnished by such other person: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants. Neither party has argued the applicability of section 2040(b), as in effect at the time of decedent's death, which provided that with respect to certain "qualified joint interests" created by a taxable gift between husband and wife, only one-half of the value of the jointly held property was includable in the estate of the first spouse to die. However, section 2040(b) is effective only for joint interests created after December 31, 1976, and the interests in this case were probably all created long before that date. For the estates of decedents dying after December 31, 1981, section 403(c)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 301-302, amended section 2040(b)↩ to provide that all joint interests with rights of survivorship between husband and wife are "qualified joint interests" without regard to the manner in which the joint interest was created, so that only one-half of the value of the jointly held property is includable in the estate of the first spouse to die. 5. Although the Black Revocable Trust was created only two months before decedent's death, respondent does not posit includability upon a section 2035 transfer within three years of death. Under the governing law, a section 2035 severance of the joint tenancy results in only one-half of the value of the joint tenancy property being included in the estate of the contributing decedent. Sullivan's Estate v. Commissioner,175 F. 2d 657 (9th Cir. 1949), revg. 10 T.C. 961 (1948); Estate of Brockway v. Commissioner,18 T.C. 488, 498-499 (1952), affd. on other issues, 219 F. 2d 400↩ (9th Cir. 1954).Petitioner has already included one-half of the value of the joint tenancy property in the decedent's estate. Respondent's argument here in that there has been no valid severance of the joint tenancy for Federal estate tax purposes, and that the full amount of the joint tenancy property is includable.
6. As respondent points out, there was no express provision in the trust agreement for any separate accounting. The agreement provided that upon the death of the first spouse, the trustee was to allocate to the Survivor's Trust all of the survivor's "separate property." That "separate property" had already been identified in the agreement, at least as to the initial assets listed on Schedule A and Schedule B. Had the trust remained in operation any period of time, it might well be that the only way the trustee could have made a proper segregation after the death of the first spouse would have been to have maintained separate accounts during the lives of both spouses.↩
7. We note that this provision is a standard provision in revocable trusts in community property states (like Arizona) and that the purpose of such a clause is to preserve the community character of the property, and thus the step-up in basis under section 1014(b)(6) of the surviving spouse's community share.See Rev. Rul. 66-283, 1966-2 C.B. 297↩; Price, Contemporary Estate Planning, sec. 10.6 at p. 586 (1982).
8. Estate of Sullivan v. Commissioner,175 F. 2d 657 (9th Cir. 1949); Glaser v. United States,306 F. 2d 57 (7th Cir. 1962); United States v. Heasty,370 F. 2d 525↩ (10th Cir. 1966).
9. See also Estate of Balazs v. Commissioner,T.C. Memo. 1981-423, affd. in an unpublished opinion 693 F. 2d 134↩ (11th Cir. 1982).
10. Section 20.2040-1(a), Estate Tax Regs., provides in pertinent part: Joint interests.--(a) In general. A decedent's gross estate includes under section 2040 the value of property held jointly at the time of the decedent's death by the decedent and another person or persons with right of survivorship, as follows: * * * (2) * * * [T]he entire value of the property is included except such part of the entire value as is attributable to the amount of the consideration in money or money's worth furnished by the other joint owner or owners. * * * Such part of the entire value is that portion of the entire value of the property at the decedent's death (or at the alternate valuation date described in section 2032) which the consideration in money or money's worth furnished by the other joint owner or owners bears to the total cost of acquisition and capital additions.↩* * * [Emphasis added.] 11. See Estate of Balazs v. Commissioner,T.C. Memo. 1981-423 at n. 3; Estate of Carpousis v. Commissioner,T.C. Memo. 1974-258↩.